**UNITED STATES**

v.

**John BOBKOSKIE, 146 54 2929, Lance Corporal (E–3), U. S. Marine Corps.**

**NCM 76 1921.**

U. S. Navy Court of Military Review.

Sentence Adjudged 20 April 1976.

Decided 19 Jan. 1977.

LT Howard L. Schwartz, JAGC, USNR, Appellate Defense Counsel.

CAPT W. D. Blalock, USMCR, Appellate Government Counsel.

Before CEDARBURG, C. J., and BAUM and GLASGOW, JJ.

GLASGOW, Judge:

This is a companion case to *United States v. Kuzel*, No. 76 1711 (N.C.M.R. 8 August 1976), *pet. den.*, 2 M.J. 157 (1976).

Consonant with his plea, the appellant was found guilty of attempt to sell government property, attempt to escape from confinement, conspiracy to rob, resisting apprehension and robbery, in violation of Articles 80, 81, 95 and 122, UCMJ, 10 U.S.C. §§ 880, 881, 895, 922, and sentenced by military judge, sitting alone as a general court-martial, to a bad conduct discharge, confinement at hard labor for four years, total forfeitures and reduction to pay grade E–1. The sentence, being within the terms of the pretrial agreement, has been approved on review below.

## JURISDICTION

■ At trial, the appellant moved to dismiss the charges, contending that his enlistment was void because he was then on probation, and that his enlistment was allegedly abetted by the recruiter misconduct. In early January 1975, the appellant, with a possession of marijuana charge pending, contacted the Marine recruiter at Fords, New Jersey, and inquired about enlisting. About 3 February 1975, the recruiter, Staff Sergeant Emmanuel, took the appellant to the Armed Forces Examining Station, Newark, New Jersey, for mental and physical tests. There he was interviewed by Master Sergeant Grier and enlisted in the Marine Corps Reserve. At that time, the appellant indicated on NavMC Form 136 that he had never been arrested, convicted or sentenced for any crime and that he was not on probation or serving a suspended sentence.

During the preceding ten years the appellant lived in Colonia, Woodbridge Township, Middlesex County, New Jersey. A check of the Woodbridge Police Department on 31 January 1975 showed no police record. The Middlesex County Chief Probation Officer's records at that time showed "1/28/75 Poss. of Marijuana—dismissed." During the interview in Newark with Master Sergeant Grier, the appellant modified his claim of no police record with the following handwritten statement:

> I was charged in September for possession of marijuana. The marijuana belonged to a girl I was seeing. I didn't want her to get in any trouble, so I told the police it was mine. Later the police found out that it was not mine and I had nothing to do with it so the charge was dismissed.

After the interview, Master Sergeant Grier typed on the NavMC Form 136, the following information:

> 19 Sept. 1974 Poss. of Marijuana arrested by Woodbridge Police Dept.
>
> 28 Jan. 1975 Found not guilty by Middlesex County Court.

On 10 March 1975, the appellant enlisted in the regular Marine Corps for two years and reported to Marine Corps Training Depot, Parris Island, South Carolina, for duty.

In support of his motion to dismiss, the appellant submitted a certificate from the clerk of the Middlesex County Court stating that the Middlesex County Juvenile And Domestic Relations Court records show his police record as follows:

1. Charged with breaking, entry and larceny and possession of stolen property on September 20, 1973, in Colonia, New Jersey. Matter referred on October 5, 1973, to Woodbridge Juvenile Conference Committee.

2. Charged with breaking, entry and larceny on November 12, 1973, in Colonia, New Jersey. Pleaded Guilty on February 11, 1974.

3. Charged with possession of Marijuana with intent to distribute same in Avenel, New Jersey, on September 17, 1974. Juvenile pleaded Not Guilty to this charge and was adjudicated Guilty on January 28, 1975. Probation terminated on May 1, 1975.

It was stipulated that Chief Judge Nicola of the Juvenile And Domestic Relations Court for Middlesex County, New Jersey, if present, would testify: that on 28 January 1975, the appellant was found guilty, contrary to his plea, of possession of marijuana with intent to distribute; that he informed the appellant that if he entered the military service within 14 days his sentence to probation for six months would not take effect; and that his sentence to continued probation did take effect, because the appellant did not enter the service within 14 days. The judge would state that during 1975 he was not contacted by any Marine Corps representative about the appellant.

The appellant testified that when he first met Sergeant Emmanuel, early in January 1975, he told the sergeant that he had been arrested several times and that he was then on probation. He also testified that he filled out some forms and, after learning that an FBI check would be made, told Sergeant Emmanuel about his police record. He said that he filled in the NavMC Form 136 to show no police record, "because he wanted to enlist in the Marine Corps." He said that he told Master Sergeant Grier that the marijuana charge had been dismissed, because he then thought that was true; he did not find out that the marijuana incident resulted in a conviction until the charges in the case *sub judice* were pending. He did not tell Master Sergeant Grier about his other police record, "because he did not ask." The appellant's mother testified that prior to appellant's enlistment, Staff Sergeant Emmanuel had asked her for the telephone number of the appellant's probation officer.

Both recruiters, Staff Sergeant Emmanuel and Master Sergeant Grier, were called by the government as witnesses on the motion to dismiss. They testified that the only police record of the appellant known or indicated to them prior to his enlistment was the one arrest for possession of marijuana. Staff Sergeant Emmanuel testified that he did talk to the appellant's mother, but never about a police record or a probation officer.

We find the appellant's story replete with inconsistencies and contradictions. For example, he testified that he had been placed on probation for six months as a result of the breaking and entering and another six months for the marijuana offense. If he had been placed on six months probation for each of the breaking/entering/larceny incidents, probation would have expired by October 1974, before he first met Staff Sergeant Emmanuel. He said he told Staff Sergeant Emmanuel about the two incidents of breaking and entering and of the possession of marijuana, of which he had not then been convicted. He made out the NavMC Form 136, on 3 February 1975, showing no police record and, after being called upon by Master Sergeant Grier to explain the marijuana incident, made a statement that it had been dismissed. He stated that at that time he thought the marijuana charge had been dismissed and continued to think so until his current court-martial was pending. However, evidence submitted by the defense shows that the appellant entered a plea of not guilty but was found guilty of the possession of marijuana.

On the other hand, the testimony of the recruiters was consistent and without contradiction. We believe the testimony of the government witnesses and agree with the trial judge in finding that the government was not a party to the appellant's fraudulent enlistment.

The appellant cites the Military Personnel Procurement Manual, Section 2110(i), viz:

"Applicants on parole, probation, or suspended sentence from civil court, other than verified cases of unconditional suspended sentence or unsupervised probation, are not eligible for enlistment or reenlistment in the Marine Corps or Marine Corps Reserve. No waiver will be granted."

and contends that his enlistment was void, hence no jurisdiction. In a landmark case of an overaged soldier who misrepresented his age to be within the acceptable range, the Supreme Court found that the Army Court-Martial did have jurisdiction. Justice Brewer, speaking for the Court, stated:

A naturalized citizen would not be permitted, as a defense to a charge of treason, to say that he had acquired his citizenship through perjury, that he had not been a resident of the United States for five years, or within the state or territory where he was naturalized one year, or that he was not a man of good moral character, or that he was not attached to the constitution. No more can an enlisted soldier avoid a charge of desertion, and escape the consequences of such act, by proof that he was over age at the time of enlistment, or that he was not able-bodied, or that he had been convicted of a felony, or that before his enlistment he had been a deserter from the military service of the United States. These are matters which do not inhere in the substance of the contract, do not prevent a change of status, do not render the new relations assumed absolutely void; and in the case of a soldier, these considerations become of vast public importance. While our regular army is small compared with those of European nations, yet its vigor

and efficiency are equally important. An army is not a deliberate body. It is the executive arm. Its law is that of obedience. No question can be left open as to the right to command in the officer, or the duty of obedience in the soldier. Vigor and efficiency on the part of the officer, and confidence among the soldiers in one another, are impaired if any question be left open as to their attitude to each other. So, unless there be in the nature of things some inherent vice in the existence of the relation, or natural wrong in the manner in which it was established, public policy requires that it should not be disturbed. *United States v. Grimley*, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890).

This case is followed today. *See United States v. Catlow*, 23 U.S.C.M.A. 142, 48 C.M.R. 758 (1974); *United States v. Russo*, 23 U.S.C.M.A. 511, 50 C.M.R. 650, 1 M.J. 134 (1975). In *Catlow* and *Russo*, the Court of Military Appeals reversed for lack of jurisdiction because of the wrongful manner in which the military relationship was established. Due to the wrongful acts of its recruiter, the government was a party to the fraudulent enlistment. In the case *sub judice* the government was not a party to the fraudulent enlistment.

Another facet of the question of jurisdiction needs to be considered. The appellant testified that about two months after he arrived at Parris Island, he was interviewed by a Captain, whose name he did not know but who he believed to be the legal officer. He told this officer that he had been found guilty of breaking and entering and of possession of marijuana and "sentenced to probation." (R. 12). He also stated that he told that officer that the marijuana charge had been dismissed. (R. 17). He said that the Marine Corps took no action on this matter following the interview. There is no indication that the appellant ever objected to service in the military.

In *United States v. Brown*, 23 U.S.C.M.A. 162, 48 C.M.R. 778 (1974), the Court of

Military Appeals held that the Army was estopped from claiming a constructive enlistment, although Brown had reached the acceptable age of 17 after enlisting at the unacceptable age of 16. There, the Army regulations required that an enlistee under the age of 17 be discharged when the proof of his age was produced before he attained the age of 17. However, Brown had made his age known to his company commander prior to reaching the age of 17 and that officer took no action to obtain proof of Brown's true age. In the case *sub judice*, the appellant's probation was terminated on 1 May 1975 and it appears that he did not talk with the officer at Parris Island until after that date. Therefore, at the time the appellant told a Marine Corps officer of his juvenile record and probation, there no longer existed a disqualification to his enlistment. Unlike *Brown*, the accused in this case continued to serve without objection for several months, drawing pay and other benefits, after his disqualification to his enlistment had been removed and did not object to such service.

In *United States v. Catlow, supra*, the Court assumed that a constructive enlistment would have been established, but for the fact that Catlow had been forced to enter the service and had protested continued service. *See United States v. Overton*, 9 U.S.C.M.A. 684, 26 C.M.R. 464 (1958). We find that the trial judge correctly denied the defense motion to dismiss.

## STANDARD OF PROOF

The appellant contends that the military judge used the wrong standard of proof in denying the defense motion to dismiss for lack of jurisdiction. In commenting on his special findings concerning the motion, the judge stated:

My findings of fact are based upon a view of the evidence on the issue as a whole and a determination, as in the case of any issue other than the ultimate issue, whether the government, the party with the burden on this issue, has carried that burden by a preponderance of the evidence.

The appellant contends that trial judge erred in his choice of standards, stating that, whenever the government bears the burden of proof, the correct burden of proof necessary to a final resolution of all factual issues is proof beyond a reasonable doubt. In support of his contention, the appellant cites, *inter alia*, *United States v. Barefield*, 1 M.J. 962 (N.C.M.R. 1976) and *United States v. Nichols*, No. 75 2021 (N.C.M.R. 20 January 1976). While the separate view of the author of the lead opinion in those two cases does support the appellant, that view was specifically disavowed by the majority of the panel and does not constitute the holding of this Court. In *Barefield*, it was made clear that this Court would require proof beyond a reasonable doubt on an interlocutory issue only if the resolution of the interlocutory issue bears upon the ultimate question of guilt or innocence. The *Manual for Courts-Martial, United States, 1969* (Revised Edition), provides that:

A question is interlocutory unless the ruling on it would finally decide the case on its merits. Questions that go to the ultimate issue of guilt or innocence are not interlocutory. Whether a question is interlocutory may vary with the context in which it arises. An issue is not purely interlocutory if an accused raises a defense or objection and the disputed facts involved go to the ultimate question of guilt or innocence. For example, if during a trial for desertion the accused makes a motion to dismiss for lack of jurisdiction and presents evidence tending to show that he is not a member of an armed force, his status as a military person reaches the ultimate question of guilt or innocence, and, if the motion is denied, the disputed facts must be resolved by each member of the court in connection with his deliberation upon the findings. If, on the other hand, the accused was charged with larceny and presented the same evidence as to his military status, the evidence would bear only upon his

amenability to trial and the issue would be disposed of solely as an interlocutory question. (Par. 57*b*).

In the case *sub judice*, appellant was charged with robbery, conspiracy, resisting lawful apprehension, attempt to escape lawful confinement, and wrongful attempt to sell government property. Since appellant presented evidence challenging the jurisdiction of the court-martial over his person, the issue for determination by the military judge was an interlocutory question. The interlocutory question in this case was purely a question of fact; that is, which witnesses were telling the truth. Paragraph 57g(1), MCM, 1969 (Rev.) provides that:

> The ruling or decision on an interlocutory question should be preceded by any necessary inquiry into the pertinent facts and law. For example, the party making the objection, motion, or request may be required to furnish evidence or legal authority in support of his contention. Upon such an inquiry, questions of fact are determined by a preponderance of the evidence.

Since the interlocutory question involved on the motion to dismiss was a question of fact, the military judge was correct in applying the standard of preponderance of the evidence. *See Lego v. Towmey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *Kidd v. State*, 33 Md.App. 445, 366 A.2d 761, 20 CrL 2238 (Md.Ct.Spec.App., November 3, 1976). In *Kidd* it was held that once the defendant objects to the introduction of a *Harris* statement,[1] the trial court must conduct a hearing at which the state bears the burden of proving the statement's voluntariness by a preponderance of the evidence.

## JUVENILE ARREST RECORD

■ The appellant contends that the military judge improperly considered his juvenile arrest record as a matter in aggravation. Prior to announcing the sentence, the trial judge made extensive remarks to the appellant concerning what factors he had considered in arriving at an appropriate sentence. The judge remarked that "except for your juvenile record" the appellant would have been qualified for a commission in the Marine Corps, once he had attained the requisite education. Reading this excerpt in context, it appears that the judge had not considered the juvenile record as a matter in aggravation, but made an attempt to explain to the appellant how much he had going for him when he enlisted in the Marine Corps. The judge referred to the appellant as a "first time offender." It is noted that the sentence adjudged was less than that specified in the pretrial agreement and relatively light in view of the maximum punishment permitted for the serious offenses of which the appellant stands convicted.

We have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Accordingly, the findings of guilty and sentence approved on review below are affirmed.

Chief Judge CEDARBURG and Judge BAUM concur.

---

1. In *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), the Supreme Court held that a statement obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and therefore inadmissible as part of the state's case in chief, may still be introduced for impeachment purposes, provided, of course, that the trustworthiness of the evidence satisfies the legal standards.