UNITED STATES

v.

**Willard Craig BREDE, 543 68 4434, Machinist's Mate Third Class, E–4, U. S. Navy.**

**NCM 76 1946.**

U. S. Navy Court of Military Review.

Sentence Adjudged 3 May 1976.

Decided 23 Feb. 1977.

CDR Carl H. Horst, JAGC, USN, Appellate Defense Counsel.

CAPT Charles P. Mackin, Jr., USMCR, Appellate Government Counsel.

Before MURRAY, MALLERY and GREGORY, JJ.

MURRAY, Senior Judge:

In appeal of his conviction by general court-martial, the appellant assigns seven errors for consideration by this Court. We need not address six of the seven, since the initial assignment attacking the jurisdiction of the court-martial over the person of the appellant has merit.

At trial the appellant testified that he was advised by his recruiter to falsely answer an inquiry concerning whether he had engaged in drug abuse prior to enlisting. [R. 46–58]. His testimony was corroborated by the stipulated testimony of Machinist's Mate Third Class Alan Michael Waltz [R. 59–60], and Mr. Edward Nielson [R. 60–61] but contradicted by the testimony of the recruiter, Chief Machinist's Mate Vernon Floyd Olson. [R. 62–65].

At the time of the appellant's enlistment, Navy recruiting regulations prohibited the enlistment of an applicant for nuclear field training if he had previously engaged in

any drug abuse including one time experimental use of marijuana.[1] No waivers could be granted. This fact was known to the recruiter and was expressly made known to the appellant by the recruiter. Although the appellant contends that he admitted to the recruiter that he had previously used marijuana, he was nevertheless advised that "what the Navy didn't know wouldn't hurt it" and was thereby encouraged to falsely deny his prior drug abuse in order to facilitate his enlistment. Such conduct on the part of the recruiter would, of course, constitute not only affirmative misconduct on his part, but also would result in appellant's enlistment contrary to then prevailing regulations. Accordingly, the court-martial would lack jurisdiction to try appellant. *United States v. Russo*, 23 U.S.C.M.A. 511, 50 C.M.R. 650, 1 M.J. 134 (1975).

Having considered this issue at trial the military judge denied the motion to dismiss and in so doing stated that:

> The court's decision is predicated upon a finding *by preponderance of the evidence* that there was no recruiter misconduct in this case. [R. 73].

Before addressing the question as to whether the trial judge's ruling was correct in light of facts circumscribing the jurisdictional issue, it is necessary to address a problem area confronting our Court with respect to the *standard of proof* required to establish jurisdiction over the person of an accused when jurisdiction is challenged upon a defense motion to dismiss.

There has been a disparity in viewpoints expressed by different judges of this Court as to what that standard should be, and a majority consensus is currently lacking. In *United States v. Barefield,* 1 M.J. 962 (N.C. M.R.1976), in a separate view expressed by this author in the lead opinion, I stated that the standard of proof in such premises is proof beyond a reasonable doubt. *See also United States v. Nichols,* No. 75 2021 (N.C. M.R. 20 January 1976) where I expressed a

---

**1.** CRUITCOM Instruction 1130.8, Subj: Navy Recruiting Manual, relevant extracts of which are set forth at Appellate Exhibit X in the record.

similar opinion. In *Barefield* and *Nichols*, my colleagues, Chief Judge Cedarburg and Judge Glasgow concurred in the result but disagreed with me as to the standard of proof, and to this time, they consider the standard to be one only of a preponderance of the evidence since "jurisdiction" to them is an interlocutory question that usually does not run to or bear on the ultimate question of guilt or innocence.[2]

In *United States v. Bobkoskie,* 1 M.J. 1083 (N.C.M.R.1977), my brothers, Cedarburg and Glasgow, reaffirmed their opinion that "preponderance of the evidence" should be the standard, notwithstanding that, earlier, Judge Glasgow had concurred in the implication that the standard was "clear and convincing" evidence as might be inferred from a reading of *United States v. Senger,* No. 76 1638, (N.C.M.R. 16 September 1976). In fairness, I must add that the inference may be misleading in that case, however, and the employment of the language "the government has not convincingly met its affirmative obligation" can also be construed as meaning the government has not met the proper standard of proof—whatever that standard might be.

In any event, it is sufficient for our purposes here to note that there is a difference of opinion as to what the standard should be, but even applying the least of the three standards discussed, i. e., "preponderance of the evidence," the facts do not support jurisdiction in the case *sub judice.*

Turning then to the facts, we examine them for their deficiencies. At trial the appellant testified that he had advised the recruiter that he had previously used an illegal drug and that the recruiter suggested that he (the appellant) not disclose that fact on his enlistment papers since (impliedly) this would disqualify the appellant from enlisting. In support of his testimony, which runs directly to the issue of recruiter misconduct cognizable under the fraudulent enlistment statute, 10 U.S.C. § 884, Article 84, Uniform Code of Military Justice (*See United States v. Russo, supra*), the appellant introduced the stipulated testimony of two other persons present at the time of the alleged recruiter misconduct, Machinist Mate Third Class Waltz, and Mr. Edward Nielson, referenced above.

The stipulated testimony of witness Waltz (who also had been recruited by Chief Olson at an earlier time) reflects that it was in response to Chief Olson's request that he (Waltz) influenced the appellant and Neilson to try to enlist in the Navy. Waltz was present during the enlistment interview and heard the appellant tell Chief Olson (the recruiter) that he (the appellant) had smoked marijuana on one or more occasions but had not been caught doing so. Waltz's stipulated testimony further advised that Chief Olson told the appellant not to worry about it and "what the Navy didn't know wouldn't hurt them." Waltz opined that Chief Olson's attitudes probably stemmed from a need to obtain recruits and out of an interest more in quantity than quality.

The stipulated testimony of Edward Neilson reflects that he accompanied the appellant to the recruiting station, and in response to "several questions" relating to the consequences of having previously used drugs, the recruiter, Chief Olson, replied to the effect that "A lot depended on how you acted after you got in . . . if you never used drugs again no one would know what you had done before."

---

2. I find nothing that is initially more significant or important in any trial than the question as to whether or not the triers of the facts are making their determinations in a forum of competent jurisdiction. It appears to me that ineluctably intertwined with the question of guilt or innocence is the initial question of proper jurisdiction to determine that ultimate issue. Jurisdiction is derived from the latin words meaning law and to speak; in essence: to speak of the law. It is absolutely basic to any other ability to voice a determination of guilt or innocence and to deprive the accused of life, liberty and property as a result of such determination that the decision-makers be empowered by law to do so. I cannot concur with my brothers that jurisdiction is merely an interlocutory matter that requires no more than a preponderance of the evidence to establish it. It is too crucial a question to rest upon that lesser requirement of proof or any standard other than proof beyond a reasonable doubt.

Although Neilson did not recall specifically hearing the appellant tell Chief Olson he had smoked marijuana, the impression he and the appellant got was that if they answered "no" to the question of previous use, they could get in the Navy Nuclear Program and if they didn't get into trouble once they were in the Navy, "no one would know".

The testimony of the appellant was lengthy and detailed, and principally to the effect that he had made his disqualifying status known to the recruiter and falsified his enlistment form concerning prior drug use at the suggestion of Chief Olson who knew the appellant could not be granted any waiver in such a case.

■ Chief Olson, in rebuttal, [R. 62–65] recalled enlisting the appellant, and testified as to the general recruiting procedures that he follow. Chief Olson couldn't recall any "specific questions" that the appellant might have asked about filling out the enlistment forms, but he was positive that the appellant never indicated that he had ever used marijuana or any form of narcotic drug nor did he ask any questions about such matters. That was the sum total of the recruiter's testimony upon which the trial judge found jurisdiction established by a "preponderance of the evidence." The trial judge erred.

The government asks us to reject the testimony of the appellant and the stipulated testimony of witnesses Waltz and Neilson and, in doing so, accept the disclaimers of the recruiter and thus find that the government has met its burden of proof by a preponderance of the evidence. The government asks too much; and even applying the lesser standard, which some of my brothers feel is all that is required, it is apparent that the evidence of record falls far short of rebutting the case of the appellant established in his jurisdictional challenge. We note no reason to reject the stipulated testimony of witnesses Waltz and Neilson even if we were to look upon the testimony of the appellant as inherently self-serving. In addition, the testimony of Chief Olson is highly suspect in light of his obvious interest in the case. It would hardly behoove him to admit to participation in a fraudulent enlistment, which was initially prompted through the services of a defense witness (Waltz) at the recruiter's specific request.

We are inclined to agree with witness Waltz's assessment that Chief Olson was more disposed to quantity than quality. While we sympathize with his position that seemed to require enlistment quotas being met in order to secure good efficiency ratings, we cannot predicate jurisdiction by condoning recruiter misconduct for any reason. The law of *Russo supra*, may be hard law, but it is the law, and while we are most reluctant to permit a miscreant an escape from answering for his crimes, we must uphold the law first and foremost.

■ The evidence of record does not furnish proof that convinces by any standard that recruiter misconduct was not occasioned in this case. Quite to the contrary, it establishes such misconduct as a fact, and its consequences are manifest. The enlistment of the appellant was void *ab initio* as a violation of the Navy's own regulations. As a result, no constructive enlistment could arise irrespective of how long the appellant served under the void enlistment. Accordingly, the court-martial lacked jurisdiction over the person of the appellant and the conviction cannot stand.

The findings and sentence are set aside and the Charges are dismissed.

Judge MALLERY absent.

Judge GREGORY (concurring in the result):

I concur with Senior Judge Murray that the government has not met its burden in this instance to establish court-martial jurisdiction over this appellant; however, I disagree with his view that this burden requires proof beyond a reasonable doubt. Rather, I concur with the rationale expressed by Chief Judge Cedarburg in *United States v. Barefield,* 1 M.J. 962 (N.C.M.R. 1976), and by Judge Glasgow in *United States v. Bobkoskie*, 1 M.J. 1083 (N.C.M.

R.1977), that the jurisdictional question in this type of situation is an interlocutory one and that such question is to be determined by a preponderance of the evidence. *See* paragraphs 57b and 57g(1), M.C.M., 1969 (Rev.).

Although I believe the military judge applied the correct standard in this case, I cannot agree with his conclusion. The testimony of appellant concerning the circumstances surrounding his enlistment, buttressed as it is by that of MM3 Waltz and Mr. Nielson, militates against our finding the government evidence sufficient to rebut the allegation of recruiter misconduct. I have no doubt that the motives of Chief Olson with respect to appellant were altruistic; however, that does not help us in finding court-martial jurisdiction over appellant.

Like Senior Judge Murray, I am "reluctant to permit a miscreant an escape from answering for his crimes," but I see no other lawful alternative.