## UNITED STATES

v.

**Private (E–2) James M. FIALKOWSKI, 188–46–9433, US Army, A Company, Headquarters Battalion, US Army Aviation Center Troop Brigade, Fort Rucker, Alabama.**

**SPCM 11504.**

U. S. Army Court of Military Review.

Sentence Adjudged 28 April 1975.

Decided 29 April 1976.

Appellate Counsel for the Accused: CPT Ralph E. Sharpe, JAGC; MAJ Richard J. Goddard, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT Richard A. Gallivan, JAGC; CPT Gary F. Thorne, JAGC; MAJ John T. Sherwood, Jr., JAGC; LTC Donald W. Hansen, JAGC.

## OPINION OF THE COURT

COSTELLO, Judge:

Appellant was convicted by a military jury, contrary to his pleas, of unlawful entry, attempted larceny and larceny in violation of Articles 130, 80 and 121, 10 U.S.C. §§ 930, 880 and 921, respectively. All offenses were committed on post, against military victims. The approved sentence is set out above.

During trial the military judge considered a psychiatric report offered by appellant in which he noticed a remark that appellant was under civilian criminal charges when he enlisted. Thereupon, the judge ordered counsel for both sides to obtain evidence on the issue of jurisdiction over the accused. During a seven week continuance, the prosecutor and defense counsel cooperated in securing some evidence concerning the civilian charges and an "Accelerated Rehabilitative Disposition Program (ARD)" appellant had entered prior to his enlistment. After accepting their evidence, the trial judge denied a motion to dismiss for lack of jurisdiction. Appellate

counsel have repeated the assertion of lack of jurisdiction and supported it with additional affidavits we accepted for filing. We hold that jurisdiction was established.

That holding is based initially on the following findings of fact. The accused voluntarily began efforts to enlist in the Army during April of 1973. Sometime prior to 22 June 1973, appellant was arrested on charges of burglary, larceny, and receiving stolen goods. On that date, appellant's civilian counsel petitioned for his entry into the ARD. Entry was granted by the responsible Assistant District Attorney on 30 July 1973 and appellant was placed in a probationary status for one year at a hearing on 22 August 1973. He enlisted five days later. The hearing judge was informed of appellant's continuing efforts to join the Army and that the Army considered him "fully qualified." The judge agreed to reconsider the period of probation upon appellant's enlistment, and did terminate it about mid-September 1973. That action had the effect of dismissing the charges against appellant. Between the termination of his ARD status and the dates of the offenses here charged, appellant participated in the Army routine of training, promotion, pay, and punishment without objection to his status. Appellant expressly declined a proffered separation from the Army for medical reasons on 18 September 1973.[1]

Several negatory findings are also warranted by the evidence before us. Appellant was in no way coerced into enlisting; the decision to admit him to the ARD program was taken independently of his prior efforts to enlist and the enlistment was no condition of the receipt of probation or its termination (although it was taken later as evidence of rehabilitation). Secondly, there is no evidence of recruiter misconduct; patently, the evidence of appellant's offenses was available, but there is no suggestion of concealment or other malfeasance by any

1. There are some gaps in the facts, but appellate defense counsel have assured us that " . . . the combination of the exhibits admitted at trial as well as the Defense Appellate Exhibits offered for this Honorable Court's consideration, provides a record complete enough to resolve the issue raised by the appellant without resort to further documentation." Brief, p. 4. We would only add the Record itself.

agent of the Government.[2] Finally, there is no evidence that appellant ever made an effort to alter his status after enlistment.

This extended factual recitation is necessary because of the critical proportions assumed by the factual aspects of some prior cases in this area. Initially, we find that we are in agreement with appellant concerning the nature of the bar to his enlistment. The charges against him were serious and subject to revival, should he have violated his probation; thus, at the time of his enlistment, he came within the prohibitions in paragraph 2–6, AR 601–210, dated 24 June 1971.

Despite the existence of that total bar to enlistment, appellant followed the procedures which ordinarily lead to a valid enlistment and the concomitant acquisition of military jurisdiction. This finding brings us to a fork in the path of legal analysis. Where the putative enlistee is offered a choice by civilian authorities between going to a civilian jail or joining the Army, he is considered a "forced volunteer" and his enlistment is "void at its inception." *United States v. Catlow,* 23 U.S.C.M.A. 142, 48 C.M.R. 758 (1974). Also if some bar to enlistment is concealed by criminal misconduct on the part of recruiting officials the enlistment is void. *United States v. Russo,* 23 U.S.C.M.A. 511, 50 C.M.R. 650, 1 M.J. 134 (1975).[3] All these cases are characterized by efforts on the part of persons with a real or induced desire to enter the Army to overcome regulatory bars to their entry by criminal conspiracy with recruiting officials. It seems clear that even benign coercion and criminal conspiracy are unacceptable bases for imposing on a citizen the significant burdens of military criminal jurisdiction. *Catlow, supra* and *United States v. Barrett,* 23 U.S.C.M.A. 474, 50 C.M.R. 493, 1 M.J. 74 (1975).

In a third, but earlier, group of cases the conditions of apparent entry upon military status were also held to belie the appearances. That group is characterized by a coercive impetus on the part of the Government, an unwilling entrant, and a failure by Government agents to follow established procedures. Typically these are cases of Reservists subjected to involuntary induction into the active forces for failure to meet their Reserve training obligations. Where such punitive overtones exist, simple failure to follow regulatory procedures constitutes a denial of due process. *United States v. Kilbreath,* 22 U.S.C.M.A. 390, 392, 47 C.M.R. 327, 329 (1973), *citing Schatten v. United States,* 419 F.2d 187 (6th Cir. 1969) and *Smith v. Resor,* 406 F.2d 141 (2d Cir. 1969). Although *Schatten* and *Smith* did not invalidate the involuntary recall of the petitioning Reservists, those courts made it clear that agencies such as the Army could not fail to follow their own regulations with impunity and remanded the cases for compliance therewith to be ordered by the District Court. In short, the *Kilbreath* rule says that the criminal liabilities of a citizen cannot be enlarged over his objection by Government agents who have failed to follow their own rules in attempting to alter his status.

That rule was applied by the Court of Military Appeals in an analogous situation in *United States v. Brown,* 23 U.S.C.M.A. 162, 48 C.M.R. 778 (1974). Brown had attempted to enter the Army when incompetent to do so because of nonage. The Government's assertion of jurisdiction on a theory of constructive enlistment was rejected because Brown's efforts to be released as a minor had been stymied by the culpable inaction of his military superiors.

---

**2.** It is clear that the recruiter's actions in this case did not even approach that condemned in *United States v. Brown,* 23 U.S.C.M.A. 162, 48 C.M.R. 778 (1974) and the later cases which have found recruiter complicity in a fraudulent enlistment.

**3.** The court's language in *Russo* was: "Because fraudulent enlistments are not in the public

interest, we believe that common law contract principles appropriately dictate that where recruiter misconduct amounts to a violation of the fraudulent enlistment statute, . . . *the resulting enlistment is void as contrary to public policy." Id.,* at 1 M.J. at 137. [Footnotes omitted, emphasis supplied.]

"Fairness" precludes finding a change of status by a course of conduct where the recipient clearly had no intent to soldier and was subject to official oppression. *Brown, supra.*

■ In sum, the Army cannot acquire criminal jurisdiction over a "willing" enlistee through the criminal acts of its agents. When the entrant is unwilling, mere negligence as to induction proceedings on the part of such agents will preclude acquisition of jurisdiction. Appellant's case has some of the factual aspects of each of the groups of cases just described. However, we find the rationale of all those cases inapplicable and hold that a different result is indicated here.

We may base our holding that appellant became subject to military criminal jurisdiction prior to committing the instant offenses on either of two theories. Both must be discussed, even though the first is conclusive.

■ Appellant became subject to military criminal jurisdiction upon his initial entry upon active duty. At that time he was *sui juris*; his choice to seek entry was entirely his own at all relevant times during the entry process [4]; the impediment to his entry was regulatory, but did not go to the issue of "competence" to serve; and there was no recruiter or other official misconduct so offensive as to dictate a contrary result.

It is, however, too plain to be ignored that the recruiter here could have discovered the existence of accused's regulatory impediment with a modicum of inquiry. We find his inaction to have been simple misfeasance and not that degree of misconduct which precludes the acquisition of jurisdiction *in personam*. The cases discussed above clearly show that a shifting standard is to be employed in such determinations: where the potential applicant is acting from his own desires (however they arose), only criminal misconduct by a recruiter blocks

the change of status; but where the impetus for change is only from the Government, misfeasance by its agents precludes a change. Such measurement of relative Government culpability is entirely consistent with standards employed by civilian courts. *Compare* the shocking misconduct which was held to preclude the acquisition of jurisdiction *in personam* in *United States v. Toscanino*, 500 F.2d 267 (2d Cir. 1974) (drugging and brutality) with the "irregularities" found no impediment (kidnapping) in *Lujan v. Gengler*, 510 F.2d 62 (2d Cir. 1975). *And see United States v. Webb*, (A.C.M.R. 26 September 1975) [Dissenting Opinion].

Our military cases have used a standard of "fairness," rather than direct measurement of the impact of official conduct on one's sensibilities. "Fairness" is a conclusion that resolves competing interests, so that the limits of Government misconduct tolerable in the acquisition of jurisdiction *in personam* are influenced by such factors as judicial reluctance to grant to any person a license to commit crime. Such was the case in *Lujan* above where the court would not accept the idea that successful flight from the territorial United States equalled absolution for misdeeds and approved his forcible return to the one jurisdiction where he could be tried, even though that return involved an international *delict*. Here, the question is similar: either a military trial or none. More persuasive because also drawn from a problem of status is this argument of Mr. Justice Brewer in his opinion in *In re Grimley*, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890):

"But where a party is *sui juris*, without any disability to enter into the new relations, the rule generally applies as stated. A naturalized citizen would not be permitted, as a defense to a charge of treason, to say that he had acquired his citizenship through perjury, that he had not been a resident of the United States for five years, or within the State or Territo-

---

4. Appellant sought help from his U.S. Senator in securing a place in the quota for non-high school graduates and was enlisted in Washington, D.C., rather than at his home in Philadelphia.

ry where he was naturalized one year . . . .. No more can an enlisted soldier avoid a charge of desertion, and escape the consequences of such act, by proof that . . . he had been convicted of a felony . . . .. These are matters which do not inhere in the substance of the contract, do not prevent a change of status, do not render the new relations assumed absolutely void. *Id.,* at 153, 11 S.Ct. at 55.

This case is more closely balanced than *Brown* or *Barrett,* for example, particularly because of the absence of positive Government misconduct. Consequently, we hold that appellant's entry into the Army created a status voidable at the option of the Government, but sufficient to subject him to military criminal jurisdiction. *Grimley, supra,* at 154, 11 S.Ct. 54; *United States v. Bean,* 13 U.S.C.M.A. 203, 32 C.M.R. 302 (1962) [Collects Federal cases]; Chapter 5, AR 635–200, 25 April 1969.

This case comes at a time of active growth in the law of military jurisdiction. Even though the holding just reached is dispositive of the issue before us, current activity in the case law requires exposition of the second basis for our result. In short, the recent cases have modified but not overturned the theory of constructive enlistment, and that theory may be applied to this case in a manner entirely consistent with the direction of recent growth.

In order to display the consistency we perceive, we now assume that the charges pending against appellant at the time of his enlistment made him incompetent to enlist. It is clear from the materials furnished by appellant that his successful manipulation of the ARD program completely expunged his disability not later than 24 September 1973. That date is no more than six days after appellant took an oath waiving his right to be separated from the Army for medical reasons and stating a desire to complete his "enlistment." [5] Absent contrary indicators, we may infer that his sworn intentions persisted. *See United States v.*

*King,* 11 U.S.C.M.A. 19, 24 C.M.R. 243 (1959). That persistence is positively indicated by his entry upon a year of routine service, unmarked by any suggestion of withdrawal from his commitment. His conduct conforms explicitly to the pattern contemplated by the Court of Military Appeals in one of the leading cases in the recent period of growth:

"An accused's acknowledged receipt of pay and other emoluments of service, such as medical attention and mess privileges, after dismissal of the civilian charges may support an inference that he intended to be a member of the military service once he was qualified."

*United States v. Catlow,* 23 U.S.C.M.A. 142, 48 C.M.R. 758 (1974), *citing United States v. Graham,* 22 U.S.C.M.A. at 76, 46 C.M.R. at 76. The record here is replete with evidence of appellant's intentions and actions, all of which are consistent with a commitment to the Army. We find that all the traditional indicia of a constructive enlistment occurred after 24 September 1973, but well before the date of the first offense charged here. *Barrett v. Looney,* 158 F.Supp. 224 (D.C.Kan.1957), *affm'd* 252 F.2d 558 (10th Cir. 1958), *cert. dend.* 357 U.S. 940, 78 S.Ct. 1390, 2 L.Ed.2d 1553 (1958); *United States v. Fant,* 25 C.M.R. 643, 647 (A.B.R.1958).

As shown above, a constructive enlistment may work a change of status as certainly as an initially valid one. However, considerations of "fairness" similar to those which render void an initial effort to enlist may operate to preclude a finding that such a change occurred by reason of a course of conduct. Thus, no constructive enlistment will rise if a minor accused has been held in the Army as a result of the failure of officials whose duty it was to release him to accede to his demands for release. *Brown, supra.* Also, the circumstances of his initial entry may be so shocking as to taint the relationship through time and prevent a course of conduct from ripening into an enlistment. *United States v. Barrett, su-*

---

**5.** Retention of certain persons whose medical defects would have precluded enlistment is au-

thorized by paragraph 5–9, AR 635–200, 25 July 1973.

*pra.* We find no such circumstances here. Not only was the appellant not held against his will, he made positive efforts to remain in the Army. Further, the circumstances of his initial entry manifest his own independent desire to enter and disclose no official misconduct sufficient to taint the relationship beyond the time of the removal of accused's disability. Thus, we find that a constructive enlistment was consummated, given the assumption with which we began.

Accordingly, the findings of guilty and the sentence are affirmed.

Senior Judge CLAUSE and Judge DONAHUE concur.