**UNITED STATES, Appellee,**

v.

**Private (E–1) Gerald A. DiGIULIO, SSN 114–46–5508, United States Army, Appellant.**

**CM 436273.**

U. S. Army Court of Military Review.

14 June 1979.

Aubrey M. Daniel, III, Esquire, argued the cause for the appellant. With him on the brief were Barry S. Simon, Esquire, and Captain William B. Ramsey, JAGC.

Captain Glen D. Lause, JAGC, argued the cause for the appellee. With him on the brief were Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R. R. Boller, JAGC, and Captain Douglas D. Franklin, JAGC.

Before DE FIORI, CARNE and MITCHELL, Appellate Military Judges.

## OPINION OF THE COURT

CARNE, Senior Judge:

The appellant and PFC Ezzard C. Sims were tried in common by a military judge sitting as a general court-martial. Each was charged with absence without leave from guard post, drunk while on duty, robbery of a soldier, wrongful communication of a threat, and abduction of a soldier.[1] They were found guilty of robbery and unlawful restraint, a lesser included offense under the abduction charge.[2] Both were found not guilty of the other charges. The appellant's adjudged and approved sentence was a bad-conduct discharge, confinement

at hard labor for 18 months, and forfeiture of all pay and allowances.

On appeal Private DiGiulio asserts *inter alia* that: (1) the court-martial lacked jurisdiction due to recruiter misconduct, (2) he was denied effective assistance of counsel, and (3) the specification of the abduction charge failed to state an offense.

### I

### THE JURISDICTION ISSUE

In his assignment of errors and brief the appellant asserts for the first time that the court-martial lacked *in personam* jurisdiction over him due to recruiter misconduct. Because of the lack of factual information on the issue, this Court found it necessary to return the case for a limited hearing. *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967). Accordingly, an order of this Court was issued directing that a limited hearing be held, if practicable, and ordering the trial judge to enter findings of fact relating to the appellant's enlistment and the allegation of recruiter fraud. The hearing was conducted and specific and general findings were entered.

The appellant's third and final brief on the jurisdiction issue contains four allegations of recruiter misconduct.[3] We shall discuss each of them.

### THE MORALS WAIVER

The appellant alleges that recruiting personnel failed to initiate and obtain a morals waiver despite disclosure by the appellant of his criminal record, including two arrests, one for intoxication and one for malicious mischief. He alleges that recruiter personnel made a false certification that necessary waivers had been obtained and that this constituted recruiter misconduct.

1. In violation of Articles 86, 112, 122 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 912, 922 and 934 respectively.

2. They were found guilty of unlawful restraint in violation of Article 134, UCMJ, 10 U.S.C.

§ 934 and Vernon's Texas Code Annotated, Penal Code Section 20.02, as assimilated by 18 U.S.C. § 13.

3. This brief was prepared after the limited hearing.

The evidence admitted at the hearing shows that a waiver was required but no documents pertaining thereto were found in the appellant's official personnel records. The hearing judge found that there are no records proving or showing that a request for a waiver was sent through the chain of command and approved. He also found that no waiver was obtained for Private DiGiulio's convictions for malicious mischief and driving while intoxicated, but he specifically declined to find that a police records check was not made.

We reject these two findings in part, and pursuant to our fact-finding power[4] we find that a waiver application was prepared and forwarded and that a waiver was obtained on 27 August 1975. While a waiver document with allied papers would normally be filed with the other enlistment documents in a permanent personnel record, we do not regard their absence from Private DiGiulio's permanent record as being conclusive evidence that no waiver was obtained. In this case we believe more weight should be ascribed to an entry on the appellant's enlistment application[5] which shows (1) that a waiver for criminal convictions was obtained, (2) the name and position of the officer who approved the waiver, and (3) the date of the approval. The hearing record shows clearly that a waiver application was processed. Private DiGiulio testified that the recruiter, SFC Fobbs, sent him to two courthouses where certain forms had to be stamped and that he visited those places after his aptitude tests but before his physical examination. He testified "I remember the, seeing the waiver and the charges written out on there. I do remember seeing the form." He also testified it was possible that he signed a waiver application. There is other evidence in the record to support the conclusion that a morals waiver was obtained.

SFC Fobbs testified that he was called and told the waiver was approved.

Based on our consideration of the entire record, we are satisfied that a legally sufficient waiver was obtained. We perceive that the failure on the part of recruiting personnel to insure that proper waiver records were maintained constitutes no more than simple negligence and is not sufficient to qualify as recruiter misconduct. See United States v. Valadez.[6] Likewise we see no indication that any recruiting personnel "smoothed the enlistment path"[7] for Private DiGiulio in regard to his waiver for criminal convictions. Accordingly, we find no merit in the allegation.

## THE CERTIFICATION

In his second allegation of recruiter misconduct, Private DiGiulio asserts that SFC Fobbs made a false certification in item 44 on his DD Form 1966. Specifically the appellant alleges that after he disclosed his alcohol problem and his alcohol-related arrest, recruiting personnel were required to investigate these matters but failed to do so. Further, he argues that SFC Fobbs' certification in item 44 of the DD Form 1966 (certification that he had witnessed Private DiGiulio sign item 42 and had verified the information furnished by Private DiGiulio) was false because there is no signature in item 42 and no investigation was conducted to verify the information supplied by the appellant on the DD Form 1966.

In our view the evidence shows that SFC Fobbs or other recruiting station personnel did verify the information that recruiting station personnel are required to verify. Our interpretation of AR 601–210, dated 15 Jan. 1975, as amended, which was admitted into evidence is that recruiting station personnel were required to screen

---

4. Article 66, UCMJ, 10 U.S.C. § 866.

5. Private DiGiulio's DD Form 1966, item 41, contained this entry: "REF 40 ABC WAIVER APPROVED 27 AUG 75 BY DAVID A. COLE LTC, INF COMMANDING NEWBURGH DRC".

6. 5 M.J. 470 (C.M.A.1978).

7. United States v. Russo, 23 U.S.C.M.A. 511, 50 C.M.R. 650 (1975).

applicants with patent alcohol problems while physicians at the Armed Forces Entrance and Examination Station were required to screen applicants who were disqualified because of alcoholism. SFC Fobbs' testimony is consistent with this interpretation.

On the other hand, there can be no doubt that SFC Fobbs signed item 44 of the appellant's DD Form 1966 without witnessing the appellant's signature in item 42 which SFC Fobbs was required to do. Item 42 is blank. From SFC Fobbs' testimony it appears that he signed item 44 before Private DiGiulio returned to the recruiting station with certain forms that would complete his enlistment packet so that if Fobbs was not present, other recruiting station personnel could proceed with Private DiGiulio's processing.

The hearing judge found that SFC Fobbs was derelict in the performance of his duty but that there was no evidence that his actions were designed to conceal or to mislead anyone concerning the appellant's prior misconduct.

■ Having carefully considered the record, we also conclude that SFC Fobbs was derelict in the performance of his duty for having signed item 44, DD Form 1966 without having witnessed the appellant's signature in item 42. However, we view his failure and that of the other recruiting personnel who reviewed the appellant's application as being simple misfeasance[8] which does not rise to the level of or fall into the class of the conduct proscribed in *United States v. Russo.*[9] Clearly there was no evidence that the recruiting personnel had a plan or design to overcome a regulatory bar.

## THE CONSPIRACY CLAIM

Next, the appellant asserts that SFC Fobbs actively facilitated the appellant's nondisclosure of disqualifying drug usage, thereby committing recruiter misconduct

that bars military jurisdiction over his person.

At the limited hearing, the appellant testified that prior to his enlistment he used heroin, barbituates, speed, LSD, glue and marihuana. He also said that prior to his enlistment he would become intoxicated with alcohol almost every day. His sister, Anjo, and his former brother-in-law, David Dickerson, both testified that while Private DiGiulio lived with them, he was drunk almost daily and that they were aware that he had used a number of drugs.

The appellant also testified that as he was filling out his application for enlistment (DD Form 1966) SFC Fobbs was observing him. He stated that when he answered "yes" to the questions in items 37a, 37b, and 37c on page 4 of the DD Form 1966 indicating that he had used unprescribed narcotics and other drugs, SFC Fobbs stopped him and asked him if he wanted "to get in the Army or stay out of the Army," whereupon he said he "wanted to get in." He testified further that SFC Fobbs took page 4, tore it up, gave him another blank page 4 and told him to start over, leaving him with the clear impression that he should change his answers to questions in 37a, 37b and 37c from "yes" to "no" if he wanted to enter the Army.

The appellant's sister testified that at the time of his enlistment Private DiGiulio was living with her family and that Private DiGiulio came home one day expressing surprise that SFC Fobbs had instructed him "to fill out the form falsely."

> Mr. Dickerson also testified as follows: I recall Gerry mentioning that whenever he was writing down all of his offenses from previous offenses (sic), and drug use and alcohol use, ah, ah, I recall he asked for some extra paper so that he could get them all down and they told him, you know, that wasn't a very good way to get into the Army, you know.

SFC Fobbs testified that he did not ask Private DiGiulio if he wanted "to get in the

---

**8.** *United States v. Valadez, supra*, note 6; *United States v. Fialkowski*, 2 M.J. 858 (A.C.M.R. 1976).

**9.** *Supra*, note 7.

Army or stay out of the Army," that he did not tear up any of Private DiGiulio's paper work and that he had never counselled anyone to falsify their paper work.

Since the testimony is conflicting we, of necessity, must give substantial weight to the hearing judge's conclusions regarding the credibility of the witnesses since he observed the witnesses as they testified. He found the testimony of Private DiGiulio and his sister as to the degree of his prior drug use and experience to be of doubtful credibility and not persuasive as to the degree of its severity and frequency. He viewed the testimony of SFC Fobbs to be generally credible but of little weight due to SFC Fobbs' lack of specific memory. Mr. Dickerson's testimony was found to be credible. Ultimately, the hearing judge found that SFC Fobbs did not assist the appellant to enter false information on his DD Form 1966.

■ Private DiGiulio's testimony in the hearing shows that he entered false information in items 37a, 37b and 37c on his DD Form 1966. This proof necessarily calls his credibility into question. After consideration of the testimony and the hearing judge's conclusions regarding the credibility of the witnesses, we conclude that SFC Fobbs did *not* assist the appellant in entering false information on his DD Form 1966 and that the allegation is without merit.

## THE INTOXICATION ISSUE

The appellant avers that his enlistment while he was intoxicated and under the influence of drugs constituted recruiter misconduct that deprived his court-martial of jurisdiction over him.

The appellant testified that he consumed 90 milligrams of valium and approximately 15 beers during the afternoon and evening of 28 August 1975 and the early hours of 29 August 1975. He testified that he (1) returned to his sister's apartment at approximately 0200 hours on 29 August 1975; (2) slept; (3) departed at 0630 hours, still intoxicated; (4) arrived at Fort Hamilton by taxi

between 0730 and 0800 hours; and (5) finished signing forms in the late morning or early afternoon of 29 August 1975. His sister and brother-in-law testified that he was intoxicated when he departed for Fort Hamilton. The government witness Dr. Schultheiss testified that if an individual had consumed 90 milligrams of valium and approximately 15 beers over a period of 12 hours, the most likely result would be that the person who consumed such would experience sedation, sleep soundly for 12 hours, and be very difficult to arouse.

The hearing judge declined to find that Private DiGiulio had consumed the amount of alcohol and valium mentioned in his testimony. He found that Private DiGiulio was intoxicated when he departed his sister's apartment, but also found that he "was not intoxicated or under the influence of any drug or depressant at the time of his enlistment to the extent that his mental and physical faculties were sensibly impaired."

■ At the time of the appellant's enlistment the regulation [10] provided that an unwaivable disqualification existed if the applicant was "intoxicated or under the influence of alcohol or drugs at the time of application or at any stage of processing for enlistment." The appellant argues for a narrow construction of the regulation saying that he was nevertheless "under the influence" of alcohol and drugs at the final stage of his processing for enlistment and was, therefore, disqualified. The Government argues for a broader construction of the regulation saying that he was not disqualified because he was not under the influence to the extent that his faculties were impaired. Our interpretation is that an applicant would have been disqualified if a reasonable person who was observing the applicant would have concluded that drugs or alcohol were reducing the applicant's capacity to reason and make decisions to any appreciable extent.

■ Based on our interpretation of the regulation and the evidence in this case, we

10. AR 601-210, Appendix A, p. A-1, Line A, dtd. 15 Jan. 1975.

find the appellant was not intoxicated or under the influence of drugs during his processing on 29 August 1975. Private Di-Giulio's testimony reveals a degree of mobility and activity during his processing that is inconsistent with the conclusion that he was intoxicated or under the influence of drugs. Likewise, his recall of specific events of that time is inconsistent with that conclusion. The appellant's personnel records which were admitted as evidence reflect neat, legible signatures by the appellant at the time of his enlistment. Furthermore the unrebutted testimony of Dr. Schultheiss is cause to question the appellant's credibility. We perceive no basis to conclude that recruiter personnel engaged in misconduct during the appellant's enlistment on 29 August 1975.

In summary we do not view the conduct of the recruiting personnel who recruited and enlisted Private DiGiulio as being error free. Nevertheless, we find no acts or omissions by recruiting personnel that should be regarded as recruiter misconduct.[11]

## II

## THE EFFECTIVE ASSISTANCE OF COUNSEL ISSUE

The appellant asserts that he was denied his right to effective assistance of counsel according to the requirements set forth in *United States v. Rivas*.[12] Specifically, he alleges that his trial defense counsel, Mr. Roberts, failed: (1) to adequately investigate, prepare and present the voluntary intoxication defense to the robbery and abduction charges; (2) to investigate, prepare and present the jurisdiction defense discussed above; and (3) to impeach the Government's key witness, PFC Stinson.

Although the defense of voluntary intoxication was presented at trial by Mr. Roberts, the appellant asserts that his counsel failed to adequately investigate, prepare and present the defense of voluntary intoxi-

cation because he failed to obtain a psychiatric evaluation of the appellant and his medical records to help prove the defense. In his affidavits filed with this Court, Mr. Roberts contends that: (1) he was adequately prepared to prove and did prove the defense of voluntary intoxication at trial; (2) Private DiGiulio was evaluated by a drug and alcohol abuse program psychologist before trial; (3) he discussed obtaining a special psychiatric evaluation with Private DiGiulio; (4) he discussed Private DiGiulio's case and the type of evaluation he sought with an Army psychiatrist who did not appear to be interested in performing any evaluation other than one to determine whether Private DiGiulio was sane at the time of the offenses and sane for trial; (5) he and Private DiGiulio agreed that they would not seek a psychiatric evaluation by an Army psychiatrist for a tactical reason; (6) Private DiGiulio asked him for his estimate of the usefulness of a civilian psychiatric evaluation; (7) he explained that it depended on the outcome of the evaluation; (8) Private DiGiulio then instructed him not to pursue the matter because he could not afford it; (9) he thought Private DiGiulio was competent to make that decision; (10) Private DiGiulio's mother knew before trial that a psychiatric evaluation had not been obtained and did not object or express disappointment; (11) he has been licensed to practice law in Texas since 1965; (12) he is the past President of the Bell-Lampasas-Mills Counties Bar Association, a serving member of the District 8 Grievance Committee and a former Air Force Judge Advocate officer; (13) he does a substantial amount of criminal law trial work; and (14) that he has experience in presenting psychiatric testimony to prove defenses.

In his affidavit filed with this Court, the appellant contends that he never directed Mr. Roberts not to contact a doctor for a psychiatric evaluation. The appellant also offers the affidavit of Dr. C. U. Franklin, a psychiatrist, from Kansas City, Missouri in

---

11. *See United States v. Russo, supra,* note 7; *United States v. Fialkowski, supra,* note 8 and the cases cited therein.

12. 3 M.J. 282 (C.M.A.1977).

which he concludes that Private DiGiulio had a history of chronic alcoholism and that on 5 March 1977 the appellant was so intoxicated that he could not form an intent to commit a crime.

█ We do not find that Mr. Roberts' investigation, preparation and presentation of the voluntary intoxication defense were inadequate because he did not obtain and present medical records and a psychiatric evaluation. The record shows that Mr. Roberts obtained an evaluation by Mr. Rooney, an experienced psychologist who specialized in the field of drug and alcohol abuse. Likewise, it shows that Mr. Roberts discussed Private DiGiulio's case with a psychiatrist. The record also shows that Mr. Roberts was prepared and did prove Private DiGiulio's history of medical and drinking problems through the testimony of a first-hand witness, the appellant's mother. Mr. Rooney also testified that Private DiGiulio had a history of alcoholism. It also appears that Dr. Franklin's testimony would be largely cumulative of the testimony of Mrs. DiGiulio and Mr. Rooney. We decline to second-guess the trial defense counsel on his choice of witnesses where it appears that his chosen witnesses adequately presented the defense's case.

█ The appellant also asserts that he was denied effective assistance of counsel because his defense counsel only presented the defense of voluntary intoxication with regard to one of the charges when it should have been presented with regard to both. As the charges and the evidence show that the offenses occurred within the same hour and since this was a bench trial, we see no likelihood that the defense would not have been considered by the judge in regard to both specific intent offenses.

█ Private DiGiulio also alleges that his defense counsel failed to investigate, prepare and present the jurisdiction defense that we have discussed above. The trial defense counsel contends that he had no reason to believe that Private DiGiulio's enlistment had been fraudulent. Moreover, we note that Private DiGiulio was repre-

sented at trial by *three* qualified attorneys (individually selected civilian counsel, military counsel of his own selection and detailed military counsel), and we think it is unlikely that three attorneys would overlook a viable defense. In the absence of some showing that Mr. Roberts had cause to believe that Private DiGiulio was disqualified for enlistment, we decline to find that the chief defense counsel failed to provide effective assistance on this basis.

The appellant also claims that his defense counsel failed to impeach the Government's key witness, PFC Stinson. The record confirms and the trial defense counsel concedes that he failed to note two inconsistencies in PFC Stinson's testimony at the Article 32 investigation and at the trial. At the Article 32 investigation Stinson testified that the appellant "appeared drunk" but at trial he said he had no "indication" that Private DiGiulio was "intoxicated." When the defense counsel pressed the issue by rephrasing his question, PFC Stinson changed his answer saying that there were indications of intoxication after Sims and DiGiulio "picked up the liquor at the package store." In addition during the Article 32 investigation PFC Stinson signed a sworn statement in which he stated: "There was a black male (PFC Sims) driving the car. When he turned the car off he reached into the back seat where I was sitting and took my radio." During the trial PFC Stinson testified that Private DiGiulio reached into the back seat and took the radio.

█ We do not view the defense counsel's failure to bring out the prior inconsistent statements as being critical. Though he did not bring out the prior inconsistent statement regarding intoxication, Mr. Roberts succeeded in getting the witness to change his testimony on the stand by pressing the question in rephrased form. Furthermore, PFC Stinson's testimony was not the only source of the Government's proof. Two other witnesses testified that Private DiGiulio appeared to be under the influence of alcohol when he returned to the guardhouse. Likewise, Mr. Roberts failure to clarify who took the radio is not critical as

PFC Sims and Private DiGiulio were both tried as principals, and there is sufficient evidence of record to show that Private DiGiulio threatened PFC Stinson and shared a common design with PFC Sims.

After careful consideration of the entire record, we are satisfied that Private DiGiulio had competent counsel who exercised the customary skill and knowledge which normally prevails within the range of competence demanded of attorneys in criminal cases. The omissions noted were not critical and were, in our view, inconsequential.[13]

### III

### THE ASSIMILATIVE CRIMES ACT ISSUE

The last issue we shall discuss is whether the specification of the abduction charge states an offense. The charge and specification read as follows:

Charge IV: Violation of Uniform Code of Military Justice, Article 134.

Specification 2: In that Private E–1 Gerald A. DiGiulio, US Army, Company A, 62d Engineer Battalion, 13th Corps Support Command, did, at Fort Hood, Texas, on or about 1830 hours, 5 March 1977, threaten to use deadly force and putting Private First Class Timothy J. Stinson in fear, unlawfully and intentionally abduct Private First Class Timothy J. Stinson, in violation of Vernon's Texas Code Annotated, Penal Code Section 20.03, as assimilated by 18 US Code Section 13.

The appellant alleges that this specification fails to state an offense in that the Assimilative Crimes Act, 18 U.S.C. § 13, is inapplicable to the conduct alleged. By its specific terms he argues, the Assimilative Crimes Act *only* adopts state law as the

applicable federal law when an offense which occurs within the "special maritime and territorial jurisdiction of the United States"[14] is "not made punishable by any enactment of Congress."[15] He maintains that the conduct described in the specification quoted above is punishable under 18 U.S.C. § 1201(a)(2), which at the time of the offense provided:

§ 1201. Kidnapping

(a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when:

. . . . .

(2) any such act against the person is done within the special maritime and territorial jurisdiction of the United States;

. . . . .

shall be punished by imprisonment for any term of years or for life.

He argues that since 18 U.S.C. § 1201(a)(2) is applicable and Texas law is not assimilated, the specification fails to state an offense, and the charge should be dismissed.

We concur with the appellant's conclusion that Texas law is not assimilated because 18 U.S.C. § 1201(a)(2) is applicable,[16] however, we do not conclude that the specification fails to state an offense. In our view the specification's factual averments give adequate notice to Private DiGiulio that he is charged with the offense of abduction under federal law.[17] Moreover, we see no valid reason to conclude that he was misled by the specification's incorrect references to Texas law and the Assimila-

---

13. *United States v. Rivas*, 3 M.J. 282 (C.M.A. 1977); *United States v. Mixson*, 5 M.J. 695 (A.C.M.R.), *pet. denied*, 6 M.J. 125 (C.M.A. 1978); *United States v. Terrell*, 4 M.J. 720 (A.F. C.M.R.1977), *aff'd on other grounds*, 6 M.J. 13 (C.M.A.1978); *United States v. White*, 4 M.J. 628 (A.F.C.M.R.1977), *aff'd on other grounds*, 6 M.J. 12 (C.M.A.1978).

14. 18 U.S.C. § 7.

15. 18 U.S.C. § 13.

16. *United States v. Hoog*, 504 F.2d 45 (CA 8th Cir. Mo.1974).

17. 18 U.S.C. § 1201(a)(2).

tive Crimes Act.[18] The United States Supreme Court has held that such references are immaterial if the charge embraces a statute which is in force.[19] Likewise, we see no valid reason to conclude that he was misled because of a change in the theory of the case.[20] Whether the charge is laid under the Assimilative Crimes Act or 18 U.S.C. § 1201, the violation is still charged as a crime or offense not capital [21] under Article 134, UCMJ, § 934. Accordingly, we find that the assignment of error lacks merit.[22]

We have considered the remaining assignments of error and we find that they are without merit.

The findings of guilty and the sentence are affirmed.

Chief Judge DE FIORI concurs.

Senior Judge MITCHELL concurs in results only.

**18.** *See United States v. McGrath*, 558 F.2d 1102 (2d Cir. 1977) and *United States v. Chestnut*, 533 F.2d 40 (2d Cir. 1976).

**19.** *United States v. Hutcheson*, 312 U.S. 219, 61 S.Ct. 463, 85 L.Ed. 788 (1941); *Williams v. United States*, 168 U.S. 382, 18 S.Ct. 92, 42 L.Ed. 509 (1897).

**20.** *But see, United States v. Cuevas-Ovalle*, 6 M.J. 909 (A.C.M.R.1979).

**21.** This subclassification is often referred to as Article 134(3).

**22.** The same issue, rationale and result is found in the recently decided case of *United States v. Dawkins*, 7 M.J. 720 (A.C.M.R.1979), *but see United States v. Perkins*, 6 M.J. 602 (A.C.M.R. 1978), for a different result and rationale.