UNITED STATES, Appellee,

v.

Louis W. RUSSO, Private, U. S. Army, Appellant.

No. 29,573.

U. S. Court of Military Appeals.

Aug. 1, 1975.

---

eligibility for enlistment. Appellant now contends that the court-martial which tried him lacked jurisdiction as a result of the recruiter's misconduct. *United States v. Brown*, 23 U.S.C.M.A. 162, 48 C.M.R. 778, (1974).

I

While the Government does not take issue with the defense assertion that the recruiter's action in providing appellant with the answers to the entrance examination rendered meaningless the established minimum test scores for enlistment. Government counsel assert that appellant lacks standing to challenge the Army's failure to abide by the regulation promulgating the minimum mental requirements[1] since the regulation operates solely for the protection and benefit of the armed services. *Korte v. United States,* 260 F.2d 633 (9th Cir. 1958), *cert. denied,* 358 U.S. 928, 79 S.Ct. 313, 3 L.Ed.2d 301 (1959); *see Daniels v. United States,* 372 F.2d 407 (9th Cir. 1967); *cf. United States v. Martin,* 9 U.S.C.M.A. 568, 26 C.M.R. 348 (1958).

 It is well-settled that a government agency must abide by its own rules and regulations where the underlying purpose of such regulations is the protection of personal liberties or interests. *American Farm Lines v. Black Ball Freight Service,* 397 U.S. 532, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970); *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954).[2] The various enlistment disqualifications evidence not only a desire to assure an effective fighting force for the country but also a commendable attempt to minimize future administrative and disciplinary difficulties with recruits by qualitatively reducing the class of eligible enlistees. *See United States v. Catlow,* 23

*Captain LeRoy W. Robinson, Jr.* argued the cause for Appellant, Accused. With him on the brief were *Colonel Victor A. DeFiori, Lieutenant Colonel James Kucera,* and *Major Richard J. Goddard.*

*Captain William A. Poore* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Lieutenant Colonel Donald W. Hansen,* and *Major Steven M. Werner.*

## OPINION OF THE COURT

FLETCHER, Chief Judge:

Although suffering from dyslexia, a mental disorder which severely impairs an individual's ability to read, appellant sought out an Army recruiter in order to enlist voluntarily in the service. Appellant's uncontroverted testimony at trial indicated that, after advising the recruiter that he could not read, the recruiter provided him with "a list of numbers and letters to put on the [Armed Forces Qualifications] test" to assure his

1. Rule C, Tables 2–1 and 2–2, Army Regulation 601–210, Personnel Procurement, Regular Army Enlistment Program (Mar. 24, 1969).

2. *See also Yellin v. United States,* 374 U.S. 109, 83 S.Ct. 1828, 10 L.Ed.2d 778 (1963); *Vitarelli v. Seaton,* 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *United States v. Heffner,* 420 F.2d 809 (4th Cir. 1969); *United States ex rel. Brooks v. Clifford,* 409 F.2d 700 (4th Cir. 1969), *rehearing denied,* 412 F.2d 1137 (4th Cir. 1969); *Smith v. Resor,* 406 F.2d 141 (2d Cir. 1969).

U.S.C.M.A. 142, 145, 48 C.M.R. 758, 761 (1974). The latter objective is not solely for the benefit of the armed services. It also is a means of protecting applicants who do not meet specified mental, physical, and moral standards for enlistment by barring their access to an environment in which they may be incapable of functioning effectively. *See United States v. Yellin,* 374 U.S. 109, 116, 83 S.Ct. 1828, 10 L.Ed.2d 778 (1963); *see also United States v. Catlow, supra.* Since it is the recruit who ultimately is protected, albeit from himself, it is he who can best assure the enforcement of such safeguards.[3] We conclude, therefore, that appellant has the necessary standing to challenge the legality of his enlistment. The result we reach will have the salutary effect of encouraging recruiters to observe applicable recruiting regulations while also assisting the armed forces in their drive to eliminate fraudulent recruiting practices. *See United States v. Heffner,* 420 F.2d 809 (4th Cir. 1969).[4]

## II

Primarily relying upon *In re Grimley,* 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890), the Government also contends that appellant's enlistment was not void as a result of the recruiter's misconduct. In *Grimley,* the Supreme Court restated the rule of voidable contracts that an individual may not profit from his own misrepresentations where the other party to the contract is misled. The Court also distinguished the status which arises from a valid enlistment contract from the usual contractual rights and obligations which flow from a binding agreement between two parties:[5]

---

**3.** The recruiting regulation with which we are here concerned is readily distinguishable from the induction statute we considered in *United States v. Martin,* 9 U.S.C.M.A. 568, 26 C.M.R. 348 (1958). The purpose of the induction statute was to increase the pool of eligible inductees, whereas, the present recruiting regulation evidences an intention to reduce the class of eligible enlistees.

**4.** Acceptance of the rationale in *Korte v. United States,* 260 F.2d 633 (9th Cir. 1958), would not dictate a contrary result for *Korte* merely

---

May [a contracting party] . . . utter a falsehood to acquire a contract, and plead the truth to avoid it, when the matter in respect to which the falsehood is stated is for his benefit? . . .

. . . . . . .

. . . Enlistment is a contract, but it is one of those contracts which changes the *status,* and where that is changed, no breach of the contract destroys the new *status* or relieves from the obligations which its existence imposes. . . . In other words, it is a general rule accompanying a change of *status* that when once accomplished it is not destroyed by the mere misconduct of one of the parties, and the guilty party cannot plead his own wrong as working a termination and destruction thereof. Especially is he debarred from pleading the existence of facts personal to himself, existing before the change of *status,* the entrance into new relations, which would have excused him from entering into those relations and making the change, or, if disclosed to the other party, would have led it to decline admission into the relation, or consent to the change.

Since appellant made known his disqualification to the recruiter, the crucial inquiry in this case must focus upon the effect of the recruiter's misconduct in smoothing the enlistment path for appellant once on notice that he legally could not qualify for enlistment. Although the Supreme Court in *Grimley* emphasized that a valid enlistment contract gives rise to a change in status which forecloses subsequent claims of breach of contract,[6] that is not to say that the Government knowingly may violate its own regulations by entering into illegal en-

---

stands for the proposition that the Government, *in accordance with its own regulations,* may waive a bar to induction and subsequently prosecute for draft evasion.

**5.** *In re Grimley,* 137 U.S. 147, 151–52, 11 S.Ct. 54, 55, 34 L.Ed. 636 (1890).

**6.** *Accord, Taylor v. Resor,* 19 U.S.C.M.A. 405, 42 C.M.R. 7 (1970); *United States v. Blanton,* 7 U.S.C.M.A. 664, 23 C.M.R. 128 (1957).

listment contracts and then subsequently rely upon the change of status doctrine as a shield to avoid judicial scrutiny. To so conclude would be to countenance on behalf of recruiters the very procedure found objectionable in *Grimley.*

 The necessary prerequisite to effect a voluntary change in status from civilian to soldier is a valid enlistment contract or a legitimate constructive enlistment. Previously we have held that "fairness prevents the Government from . . . relying upon a constructive enlistment as a jurisdictional base" where Government agents acted improperly in securing an individual's enlistment. *United States v. Barrett,* 23 U.S.C.M.A. 474, 50 C.M.R. 493, 1 M.J. 74 (1975). *Accord, United States v. Brown, supra.* Similarly, the Government would be obligated to terminate an enlistment where a recruiter knowingly enlisted or aided in enlisting an individual who had given timely notice that he was disqualified for military service. *United States v. Brown, supra.*

Because fraudulent enlistments are not in the public interest, we believe that common law contract principles[7] appropriately dictate that where recruiter misconduct amounts to a violation of the fraudulent enlistment statute,[8] as was the situation here, the resulting enlistment is void as contrary to public policy. Hence the change of status alluded to in *Grimley* never occurred in this case.

### III

Since the void enlistment issue was raised in appellant's testimony at trial, the Government had an affirmative obligation to establish jurisdiction over him. *United States v. Graham,* 22 U.S.C.M.A. 75, 46 C.M.R. 75 (1972); *United States v. Garcia,* 5 U.S.C.M.A. 88, 17 C.M.R. 88 (1954). The absence of controverting evidence on the jurisdictional question either at trial or during the course of this appeal obviates the need for a limited rehearing. *United States v. Barrett, supra.*

The decision of the United States Army Court of Military Review is reversed. The findings of guilty and the sentence are set aside, and the charge is ordered dismissed.

Judge COOK and Senior Judge FERGUSON concur.

---

7. *See, e. g., Steele v. Drummond,* 275 U.S. 199, 48 S.Ct. 53, 72 L.Ed. 238 (1927); *Burck v. Taylor,* 152 U.S. 634, 14 S.Ct. 696, 38 L.Ed. 578 (1894); *Marshall v. Baltimore & Ohio R. Co.,* 57 U.S. (16 How.) 314, 14 L.Ed. 953 (1853).

8. Article 84, Uniform Code of Military Justice, 10 U.S.C. § 884.