**UNITED STATES**

v.

**Stephen P. HARRIS, 061 38 5014, Captain (0–3), U. S. Marine Corps.**

**NCM 76 1241.**

U. S. Navy Court of Military Review.

22 April 1977.

LT Lawrence S. Smith, JAGC, USNR, Appellate Defense Counsel.

LT Michael C. Farrow, JAGC, USNR, Appellate Government Counsel.

Before CEDARBURG, BAUM and GLASGOW, JJ.

BAUM, Judge:

Based on his pleas of guilty, Captain Steven P. Harris, USMCR, the appellant in this case, was convicted by general court-martial, judge alone, of: one specification of unauthorized absence for one month; two specifications of making false official statements with intent to deceive; two specifications of larceny; one specification of wrongful appropriation; one specification of unlawfully making and uttering a check with intent to defraud; and one specification of presenting for approval a false claim, in violation, respectively, of Articles 86, 107, 121, 123(a) and 132, UCMJ, 10 U.S.C. §§ 886, 907, 921, 923(a), 932. The judge sentenced the appellant to be dismissed from the service, to be confined at hard labor for three years and to forfeit all pay and allowances. The convening authority approved the sentence, granting credit for pretrial confinement served from 14 June 1975 to 20 January 1976, pursuant to the judge's recommendation. On 22 January 1976 the convening authority deferred the remaining confinement until such time as the sentence is ordered into execution. In his action on the record on 14 April 1976, the convening authority also deferred the forfeitures until execution of the sentence. Appellant has assigned as error that the court-martial lacked personal jurisdiction over him. This issue was fully litigated at trial and rests on facts that are not in dispute.

These facts show that appellant first enlisted in the U. S. Marine Corps on 17 February 1970. Two years later he was honorably discharged and re-enlisted for six years on 18 February 1972. On 30 June 1972 he applied for a commission under the "Enlisted Commissioning Program", was accepted, and on 19 September 1972 received orders to Officer Candidate School. He commenced the program of instruction there on 8 January 1973 and upon completion, on 29 March 1973, was discharged from the U. S. Marine Corps to permit acceptance of a commission as a Second Lieutenant in the U. S. Marine Corps Reserve. Appellant was thus commissioned on 30 March 1973 as a Second Lieutenant and

commenced Basic School, graduating on 11 October 1973. Thereafter, he was enrolled at the U. S. Naval Justice School which he completed on 19 December 1973. From there he was assigned to the Office of the Staff Judge Advocate, 2nd Marine Division where, for a period of a year and a half, he successfully performed duties first as a trial counsel before general and special courts-martial and later as a court-martial review officer. He was serving in that latter capacity when an investigation was commenced that ultimately led to the charges of which he now stands convicted. Appellant, at trial and before this Court, argues that military jurisdiction over his person terminated upon his discharge from enlisted status on 29 March 1973 because his subsequent commission was void due to his failure to meet Marine Corps educational requirements for commissioning, as set forth in Marine regulations. He further asserts that although his discharge from enlisted status might appear to be conditioned upon satisfactorily meeting the requirements for commissioning, with reversion to enlisted status upon failure to meet these requirements, the Government is estopped from claiming this basis for jurisdiction because it "knew or should have known that he did not meet the necessary educational requirements, but yet commissioned him anyway."

Appellant's commission and designation as a judge advocate both were obtained by fraud. When applying for these positions, appellant submitted evidence that he had completed required college work and had attained various academic degrees, including one in law, and that he was admitted to practice law in New York, all of which was false. He now asserts that the Government was grossly negligent in failing to uncover this fraud. The Naval Investigative Service was, in fact, requested to investigate certain discrepancies that appeared in applications he had submitted; but in pursuing the investigation, NIS deemed the matters resolved after interviewing appellant and his education officer. The appellant satisfactorily explained the discrepancies to the investigator, while the education officer indicated that he had

sighted transcripts. Appellant later produced these false educational transcripts for the NIS agent, thus satisfying the agent whose investigative conclusions, together with the report of the interviews, were forwarded to Headquarters Marine Corps and permitted further processing of appellant's application. Despite appellant's false application and subsequent lies to an investigator, he now argues that the Government was grossly negligent in believing him and, instead, should have made direct contact with the foreign universities from which he claimed degrees. We disagree. Appellant's acceptance into the "Enlisted Commissioning Program" was accomplished by his misrepresentations, without complicity by any Government agents. We specifically find that the actions of the Naval Investigative Service agent in interviewing appellant and his education officer were reasonable under the circumstances and did not constitute simple negligence, much less gross negligence. Furthermore, while *United States v. Brown*, 23 U.S.C.M.A. 162, 48 C.M.R. 778 (1974) is cited by appellant in support of the argument that gross negligence is condemned in the same manner as actual misconduct when committed by Government agents, that case does not stand for this proposition. *Brown* involved misconduct on the part of the recruiter, rather than negligence. Although the actions of the recruiter in that case may not have amounted to a violation of the fraudulent enlistment statute, it was misconduct for him to sign a parental declaration of consent form as witnessing the father's signature when, in fact, he had not witnessed the father's signing, thus permitting the accused's forgery of the father's consent to go undetected. Accordingly, we find that the Government is not estopped from claiming jurisdiction by reversion of appellant to his former enlisted status by reason of his failure to qualify for a commission. It is unnecessary, however, to find jurisdiction on that basis, for we find that appellant's status as a commissioned officer was not void. It was, instead, voidable at the option of the Government upon discovery that ap-

pellant had lied about his education. Appellant has no standing to void the commission for failure to meet Marine educational requirements. We agree with Government counsel that completion by prospective officers of 30 semester or 45 quarter hours of college education, which was required by Marine Corps Order 1040.9g, was for the sole benefit of the Marine Corps, not the applicants. The facts of this case are clearly distinguished from those in *United States v. Russo*, 23 U.S.C.M.A. 511, 50 C.M.R. 650, 1 M.J. 134 (1975), where the Court found that the applicable enlistment standards were for the accused's benefit as well as that of the service, the accused disclosed his infirmity and the recruiter's misconduct resulted in the enlistment. In the instant case appellant's discharge from enlisted status and subsequent commissioning resulted directly from his own misrepresentations of having met educational requirements that were for the sole benefit of the Government whose agents partook of no misconduct. The principles of *In re Grimley*, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890), although involving an enlistment when overage rather than a commissioning without having met college educational requirements, apply with full force here. The quote from that case in Government counsel's brief seems particularly apt:

> On the other hand, suppose for any reason it could be contended that the provision as to age was for the benefit of the party enlisting, is Grimley in any better position? The matter of age is merely incidental, and not of the substance of the contract. And can a party by false representations as to such incidental matter obtain a contract, and thereafter disown and repudiate its obligations on the simple ground that the fact in reference to this incidental matter was contrary to his representations? May he utter a falsehood to acquire a contract, and plead the truth to avoid it, when the matter in respect to which the falsehood is stated is for his benefit?
>
> \* \* \* \* \* \*
>
> He cannot of his own volition throw off the garments he had once put on, nor can

he, the state not objecting, renounce his relations and destroy his status on the plea that, if he had disclosed truthfully the facts, the other party, the state, would not have entered into the new relations with him, or permitted him to change his status. [*In re Grimley* at 151 and 152, 11 S.Ct. at 54 and 55].

The Government having chosen not to void the appellant's commission upon discovery of his fraud leaves him in that status and he cannot be heard to complain. We find jurisdiction.

The findings of guilty and sentence as approved below are affirmed.

Chief Judge CEDARBURG and Judge GLASGOW concur.