**UNITED STATES**

v.

**David B. LONG, 458 06 1315, Lance Corporal (E–3), U. S. Marine Corps.**

**NCM 78 0446.**

U. S. Navy Court of Military Review.

Sentence Adjudged 5 Dec. 1977.

Decided 11 Aug. 1978.

CAPT G. M. Potter, USMC, Appellate Defense Counsel.

LCDR Paul B. Thompson, JAGC, USN, Appellate Government Counsel.

Before CEDARBURG, C. J., and ROOT and GREGORY, JJ.

GREGORY, Judge:

In his single assignment of error on appeal, appellant alleges that his court-martial lacked jurisdiction over him because misconduct on the part of his recruiter produced a fraudulent enlistment.

The record of trial reveals that appellant enlisted in the United States Marine Corps Reserve (Class "J") on 15 January 1975. He was discharged from this Reserve enlistment on 10 February 1975, and on 11 February 1975 he enlisted in the United States Marine Corps and came on active duty. Appellant testified that, prior to his Reserve enlistment, his recruiter provided him the list of answers for the Armed Forces Vocational Aptitude Test, which was administered several days later. Appellant states that he was able to commit these answers to memory and, thereby, obtain a high score on the test. (R. 10–11, 15–16). Appellant provided the only testimony on this point. The recruiter was not called as a witness, so his version of what transpired with respect to the enlistment examination remains unknown. We are somewhat skeptical of appellant's testimony concerning the enlistment test, in view of other evidence in the record that appellant has a GCT of 117 and achieved good scores without assistance on a similar test administered shortly after his second enlistment and entrance on active duty. (Defense Exhibit D). It appears that little reason would have existed for the recruiter to resort to these illegal measures, since the recruiter should have been aware that, although appellant was not a high school graduate, he did possess a GED high-school-equivalency certificate. (R. 11; Defense Exhibit B). In view of the posture of the evidence, however, we must assume the recruiter "facilitated a fraudulent enlistment by 'rendering meaningless the established minimum scores for enlistment'." *United States v. Little,* 1 M.J. 476 (C.M.A.1976); *United States v. Russo,* 1 M.J. 134 (C.M.A.1975).

From the foregoing, appellant's initial Reserve enlistment must be considered to have been occasioned by recruiter misconduct and to have been void at its inception. The Government argues, however, that the taint surrounding the initial enlistment does not carry over into appellant's current enlistment in the Regular Marine Corps, during which the offenses involved in the instant case were committed. The record of trial establishes that the Reserve enlistment was effected in Weatherford, Texas, while the current Regular enlistment was accomplished in Dallas, Texas, and that two different recruiters were involved. There is also no indication that the Dallas recruiter was aware of any assistance on the enlistment test provided by his Weatherford associate. The Government relies on the prior decisions of this Court in *United States v. Cook,* 1 M.J. 682 (N.C.M.R.1975), *pet. denied,* Docket No. 31,611 (U.S.C.M.A. 1 March 1976), and *United States v. Crowe,* No. 77 0552 (N.C.M.R. 22 July 1977), *pet. denied,* 4 M.J. 280 (C.M.A.1978), for support of its thesis that any recruiter misconduct concerning the first enlistment is cured by the second enlistment. We believe *Cook* is distinguishable on its facts and that *Crowe* is too broad in its sweep.

In *Cook,* the appellant had enlisted in the Navy under the "CACHE" program. Under that enlistment program, an applicant first joined the Naval Reserve, was later discharged therefrom, and then enlisted in the Regular Navy. Senior Judge Evans, writing for this Court in *Cook,* noted however, that under the regulations applicable to the "CACHE" program, the enlistee could refuse to enter into the second contract and an enlistment into the Regular Navy was not required. On this basis, it was held in *Cook* that the recruiter misconduct involved in that case "cannot be considered beyond the date the void [Reserve] contract expired."

In a decision shortly after *Cook, United States v. Magee,* No. 75 1328 (N.C.M.R. 20 November 1975), Senior Judge Evans addressed a similar situation, where civilian

criminal charges were pending both at the time of enlistment into the United States Marine Corps Reserve (Class "J") and at the time of subsequent enlistment into the United States Marine Corps. Here, in *Magee,* it was held that the "change of status test" relied on in *Cook* was not applicable because the right of refusal with regard to the second enlistment was not present. For this reason, Senior Judge Evans found *Cook* to be distinguishable and, since the disqualifying civilian offenses were still pending at the time of Private Magee's second enlistment into the Regular Marine Corps, jurisdiction over certain military offenses occurring during that second enlistment was found lacking. In the case *sub judice,* we are also concerned with an enlistment into the United States Marine Corps Reserve (Class "J"), with later enlistment into the United States Marine Corps.

From the two cases of *Cook* and *Magee,* it would appear that if, (1) the disqualification (or recruiter misconduct) is still in existence when the second enlistment contract is executed, or, (2) the second enlistment contract is not purely voluntary, then the "change of status", necessary to provide court-martial jurisdiction after an initial void enlistment, never comes into being. This rationale appears consistent with the discussion of "change of status" from civilian to military found in *United States v. Russo, supra.*

In view of *Magee,* the decision in *Cook* is considered to provide no support for the Government's contention in this case concerning the cleansing effect of the second enlistment. *Magee* indicates that the right of refusal to enlistment in the Regular Marine Corps is not present in the enlistment program involved in this case. The evidence in this case does nothing to disabuse this proposition. In fact, the Government offered no evidence in opposition to appellant's motion to dismiss for lack of personal jurisdiction.

Aside from *Cook,* the Government places even stronger reliance on *United States v. Crowe, supra. Crowe* contains facts very similar to the case *sub judice*—an enlist-

ment under the USMCR(J) Program, followed by an enlistment 23 days later into the Regular Marine Corps, and no indication that the second recruiter was aware of possible recruiter misconduct at the time of the Reserve enlistment. In *Crowe,* it was held that the two enlistments were separate and distinct and that the taint of recruiter misconduct in one enlistment does not carry over and infect a subsequent enlistment.

As a general rule, we do not dispute the *Crowe* rationale. We agree with the observation of Senior Judge Evans in *Cook* that there surely must be some time lapse beyond which recruiter misconduct in an original enlistment must pale. *United States v. Cook, supra,* at 686. Certainly, one who serves out a normal three or four-year enlistment and reenlists for another normal term should not be allowed to reach back to the time of his first enlistment to claim recruiter misconduct as a bar to court-martial jurisdiction. Nor, do we have any difficulty with the Reserve to Regular situation, such as was found in *Cook,* where there was a lapse of several months, where the recruiter misconduct involved in the Reserve enlistment was not present at the time of the Regular enlistment, and where the decision to proceed from Reserve to Regular status remained voluntary. Where we do break ranks with *Crowe,* however, is where the lapse of time between enlistments is very brief, the enlistments are interrelated, and the recruiter misconduct involved in the first enlistment paves the way for entry into the second enlistment. In lumping together all prior enlistments of whatever duration and of whatever circumstances surrounding their inception, we believe *Crowe* ignores the true impact which recruiter misconduct may have on a subsequent enlistment.

In the case of this appellant, only 27 days elapsed between the two enlistments. The purpose of appellant entering into the Reserve enlistment was merely to enter a "holding pattern" until he could be brought on active duty, at which time he would enlist in the Regular Marine Corps. Also the only enlistment examination taken by

this appellant during his enlistment process was that given prior to the initial Reserve enlistment. Appellant states that he was provided the answers for this examination. We believe it is a fair inference from the evidence of record that the second recruiter relied upon the results of that examination in effecting appellant's current enlistment in the Regular Marine Corps. In fact, a notation on Defense Exhibit B, made at the time of appellant's second enlistment, indicates as much. For this reason, we believe the alleged misconduct of the first recruiter would still have been in existence and would have been incorporated into the second enlistment.

As we have previously indicated, the Government offered no evidence in opposition to the motion to dismiss for lack of jurisdiction. There is nothing to indicate that appellant had a free choice as to entering into his current Regular enlistment after once entering into his USMCR(J) enlistment; nor is there anything to establish that the second recruiter did not rely, wittingly or unwittingly, on the alleged misconduct of the first recruiter. We have some question whether there has been recruiter misconduct in this case; however, appellant's allegation is essentially unchallenged. The burden is on the Government to establish a basis for jurisdiction. *United States v. Russo, supra,* at 137. That burden has not been met in this case.

Accordingly, the findings of guilty and the sentence are set aside. The charges are dismissed.

Chief Judge CEDARBURG and Judge ROOT concur.