UNITED STATES

v.

Glenn E. BRINSON, 246 04 7401, Private First Class (E-2), U. S. Marine Corps.

NCM 79 0785.

U. S. Navy Court of Military Review.

Sentence Adjudged 22 Nov. 1978.

Decided 18 Jan. 1980.

LT David S. Durbin, JAGC, USNR, Appellate Defense Counsel.

LCDR John C. Vinson, JAGC, USN, Appellate Government Counsel.

Before DUNBAR, Senior Judge, and GREGORY and GLADIS, JJ.

DUNBAR, Senior Judge:

On 1 and 22 November 1978 appellant was tried by a special court-martial consisting of military judge alone. Convicted, contrary to his pleas, of unauthorized absence in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886, appellant was subsequently sentenced to confinement at hard labor for 60 days, to reduction to E–1, and a bad-conduct discharge. The convening authority approved the sentence but suspended execution of the punitive discharge for 6 months. The supervisory authority also approved the sentence.

■ As his first assignment of error, appellant claims certain irregularities exist with regard to Prosecution Exhibit 2. That exhibit, an "Offenses and Punishments" form (page 12), reflects the date 26 February 1978, followed by an entry noting that appellant received nonjudicial punishment for assault and possession of an illegal weapon. It also reflects the punishment he received for the offense. Attached immediately above Prosecution Exhibit 2 is a form evincing a waiver by appellant of his right to removal of offenses from Article 15 to trial by courts-martial. A provision at the bottom of the form states that the form relates to nonjudicial punishment conducted on 15 February 1978. Appellant asserts that there is no evidence that there is any connection between the waiver form and the page 12 entry. We disagree.

Trial counsel submitted both documents to the defense counsel for possible objection. (R. 49). The military judge then asked defense counsel if he would stipulate the "Offenses and Punishments" form to be

a true copy of the accused's page 12. Defense counsel so stipulated. In the absence of an objection by defense counsel that the two documents were unrelated and therefore prejudicial to the accused, we will infer regularity in their preparation and submission as exhibits properly before the court. Paragraph 114*b*, *Manual for Courts-Martial, 1969 (Rev.)*.

■ In his second assignment of error, appellant asserts that the staff judge advocate review incorrectly indicated that the accused pleaded guilty to the single charge and specifications. There is little question that this was a simple and unintentional misstatement of fact. On page 1 of the review, the staff judge advocate correctly noted that the accused pleaded not guilty. The court-martial order does the same.

■ Appellant further complains that the record is silent as to whether the trial defense counsel made comments concerning the staff judge advocate's review and that the record merely shows that he acknowledged receipt of a copy of the review. There is a presumption of regularity with regard to judicial records and the burden of impeaching the completeness of a record rests with the party seeking to attack it. *United States v. Weaver*, 1 M.J. 111 (C.M.A. 1975). Appellate defense counsel could easily ascertain whether his concern has any foundation by communicating with trial defense counsel, thereby obviating the necessity for this court to return the record for such a determination, as was done in the distinguishable case of *United States v. Curtwright*, No. 79 0905 (N.C.M.R. 28 September 1979).

■ In his third assignment of error, appellant maintains that the military judge applied the wrong standard in weighing the evidence; he implies that the military judge

imposed a burden upon the accused to "produce" evidence of a reasonable doubt regarding jurisdiction. (R. 44). This is not correct. The record clearly shows that the court and trial counsel understood the burden of proof to be on the Government to prove jurisdiction over the accused beyond a reasonable doubt. (R. 31). In light of *United States v. Bailey*, 6 M.J. 965 (N.C.M. R.1979), that understanding was in error; the correct standard is proof by a preponderance of evidence. In any event, it is clear that the military judge was not imposing any burden upon the accused with regard to jurisdiction. The military judge was merely informing the accused that he had not come forward with sufficient evidence to rebut the Government's evidence, a stipulation of testimony agreed to by the trial counsel and defense counsel.

■ Finally, appellant asserts that the military judge concluded that the evidence neither affirmatively established recruiter misconduct nor positively excluded the possibility of such misconduct. Therefore, appellant cites *United States v. Loop*, 4 M.J. 529 (N.C.M.R.1977), as holding that when the evidence is in "equipoise" on the issue of recruiter misconduct, jurisdiction can only be sustained on a showing of a valid constructive enlistment. We do not believe that the military judge considered the evidence of recruiter misconduct to be in equipoise.

The statement by the military judge that "the recruiter may have been told of some drug use by this accused" does not, in our opinion, constitute a finding of recruiter misconduct on the part of the court. Moreover, recently enacted legislation would appear to moot the question of recruiter misconduct divesting a court-martial of jurisdiction over an accused.[1] Through either

---

1. Department of Defense Authorization Act, Fiscal Year 1980, Pub.L.No.96–107, § 801(a), 93 Stat. 803. Senate Report No. 96–197, accompanying Senate Bill 428, U.S.Code Cong. & Admin.News 1979, p. 3696 (authorizing appropriations for fiscal year 1980), describes the pur-

pose of amending Article 2, Uniform Code of Military Justice, 10 U.S.C. § 802, as follows:
Subsection (a) of Section 801, therefore, amends Article 2 of the UCMJ to affirm the law and public policy of the United States dealing with the commencement of *in person-*

oversight or deliberate intent neither the retroactivity nor the possible *ex post facto* character of this new legislation was specifically addressed. Instead, the legislation essentially implies that the Court of Military Appeal's opinions in the *Catlow-Russo* series of cases, particularly those based upon "intimations" contained in the case of *In re Grimley,* 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890), are inconsistent with the administration and operation of an efficient and effective military arm. Thus the questions arise: Can a public law enacted by Congress retroactively repudiate and invalidate legal doctrines set forth in Court of Military Appeals decisions as they relate to day-to-day military operations and personnel transactions? Is such legislation *ex post facto* in nature; that is, does it deprive an accused of previously available defenses in violation of Article I, section 9 of the Constitution? Nonetheless, it should be recognized that the issue of retroactivity and the

*am* jurisdiction for purposes of the Code. The amendment is expressly intended to overrule *United States v. Russo,* 1 M.J. 134 (C.M.A.1975), in which the Court of Military Appeals held that an otherwise valid enlistment was void for purposes of UCMJ jurisdiction due to recruiter misconduct in the enlistment process and that this recruiter misconduct estopped the armed forces from relying upon the doctrine of constructive enlistment. This amendment adds two new subsections to Article 2 of the Code to resolve these related yet distinct jurisdictional problems. It is not intended to affect any administrative matter relating to fraudulent enlistment.

The first portion of the amendment (new Subsection (b) of Article 2) overrules that portion of *United States v. Russo* which invalidated for jurisdictional purposes an otherwise valid enlistment because of recruiter misconduct in the enlistment process. It does so by reaffirming the law as set forth by the Supreme Court in *In re Grimley,* 137 U.S. 147, [11 S.Ct. 54, 34 L.Ed. 636] (1890), and requiring compliance with only two factors before an enlistment will be considered valid: capacity to understand the significance of enlistment in the armed forces and the voluntary taking of the oath of enlistment. . .

The second portion of the amendment (new Subsection (c) of Article 2) provides for jurisdiction based upon a constructive enlistment. A constructive enlistment arises at the time an individual submits voluntarily to military authority, meets the mental competency and minimum age qualifications contained in Sections 504 and 505 of Title 10, United States Code, receives military pay or allowances and performs military duties. This doctrine is applicable when there is not an otherwise valid enlistment. An individual who meets the four-part test for constructive enlistment will be amenable to UCMJ Jurisdiction even if the initial entry of the individual into the armed forces was invalid for any reason, including recruiter misconduct or other improper Government participation in the enlistment process. This amendment thus overrules those portions of *United States v. Brown,* 23 U.S.C.M.A. 162, 165, 48 C.M.R. 778, 781 (1974), *United States v. Barrett,* 1 M.J. 74 (C.M.A.1975), *United States v. Harrison,* 5 M.J. 476, 481 (C.M.A.1978), and *United States v. Russo,* which held that improper Government participation in the enlistment process estops the Government from asserting constructive enlistment. It also overrules that portion of *United States v. Valadez,* 5 M.J. 470, 473 (C.M.A.1978) which stated that an uncured regulatory enlistment disqualification, not amounting to a lack of capacity or voluntariness, prevented application of the doctrine of constructive enlistment. The new subsection is not intended to affect reservists not performing active service or civilians. It is intended only to reach those persons whose intent it is to perform as members of the active armed forces and who met the four statutory requirements. It thus overrules such cases as *United States v. King,* 11 U.S. C.M.A. 19, [28] C.M.R. 243 (1959). An individual comes within new Subsection (c) whenever he meets the requisite four-part test regardless of other regulatory or statutory disqualification. A person who initially does not voluntarily submit to military authority or who lacks the capacity to do so may do so successfully at a later time and jurisdiction shall attach at that moment. As a result, an individual who fails to meet the minimum age requirements set forth by statute, 17 years of age at present, may form a constructive enlistment upon reaching that age. Similarly, an individual who initially submits to military authority because he or she is given a choice between jail or military service and who subsequently does not protest the enlistment, make any effort to secure his or her release, and accepts pay or allowances may effect a constructive enlistment for jurisdictional purposes.

In other words, what the above report really attempts to say is that there is no effective relationship between the doctrines and policies of the High Court enunciated in the above cases and the military environment in which they purport to operate. Accordingly, they are no longer applicable.

issue of whether the new legislation is *ex post facto* in nature have not been answered and will ultimately have to be addressed by the Courts in specific cases as they arise.

In view of the foregoing, the findings, and sentence, as approved below, are affirmed.

Judge GREGORY and Judge GLADIS concur.