UNITED STATES, Appellee,

v.

Gary A. BUCKINGHAM, Airman Basic,
U. S. Air Force, Appellant.

No. 39,091.
ACM 22575.

U. S. Court of Military Appeals.

June 15, 1981.

For Appellant: *Captain Patrick A. Tucker* (argued); *Colonel Larry G. Stephens* (on brief).

For Appellee: *Captain Michael J. Hoover* (argued); *Colonel James P. Porter, Captain William B. Smith* (on brief).

Opinion of the Court

FLETCHER, Judge:

The appellant was tried by general court-martial on May 15 and 16, 1979. Contrary to his pleas, he was found guilty by a mili-

tary judge of numerous offenses.[1] He was sentenced to a bad-conduct discharge, confinement at hard labor for 2½ years and total forfeitures. The convening authority approved the sentence as adjudged on August 14, 1979. The Air Force Court of Military Review affirmed the sentence on March 17, 1980. 9 M.J. 514.

The issue granted for review by this Court is:

WHETHER THE MILITARY JUDGE ERRED, TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT, WHEN HE UTILIZED THE STANDARD OF CLEAR AND CONVINCING EVIDENCE IN RESOLVING, ADVERSELY TO THE APPELLANT, DISPUTED FACTS ON THE ISSUE OF WHETHER THE COURT–MARTIAL HAD JURISDICTION OVER THE PERSON OF THE APPELLANT.

After closer examination of the record of trial, we find that the granted issue need not be answered for us to reach a final disposition in this case. On the basis of our decisions in *United States v. Stone*, 8 M.J. 140 (C.M.A.1979), and *United States v. Murawsky*, 7 M.J. 353 (C.M.A.1979), we affirm the result reached by the Court of Military Review.

Prior to his court-martial the appellant moved to dismiss all the charges and specifications against him because the court-martial lacked jurisdiction over his person. *United States v. Russo*, 1 M.J. 134 (C.M.A. 1975). The primary thrust of the appellant's motion was that he was improperly enlisted in the Air Force because his recruiter violated service regulations in effecting his enlistment. *See generally* Air Training Command [ATC] Regulation[2] 33–2, Military Personnel Procurement: Recruiting Procedures for the United States Air Force (April 25, 1977). In particular, he noted that his recruiter advised him not to list three civilian offenses in his waiver request form [ATC 1415 (January 1978)]. He argued that, before he could be enlisted in the Air Force, these offenses had to be listed and a moral waiver obtained through Air Force channels, or in the alternative, that he was not eligible to enlist at all until charges concerning these offenses had been disposed of by civilian authorities. Finally, he asserted that he was unlawfully induced by his recruiter to join the Air Force. The military judge denied the motion but entered special findings to support his ruling.

He stated in part:

The testimony of Airman Buckingham, his mother and Mr. Tom Jones establishes that Airman Buckingham was the subject of informal action by juvenile authorities due to allegations that he was involved in larceny of $8.00 in March 1977, larceny of a rifle and some tapes in October 1977, and larceny or receiving stolen bus tickets in January 1978. Although the authorities had apparently taken final action regarding the March 1977 incident, Mr. Jones, the Juvenile Probation Officer, kept an open file regarding the latter two incidents for "as long as he stayed out of trouble," referring to Buckingham.

. . . . .

I find that Airman Buckingham was alleged to have been involved in three incidents of juvenile criminal misconduct not listed on Prosecution Exhibits 1, 5, or 7. One of the incidents in March 1977 was handled by school authorities and there is no indication that there was official involvement of the appropriate juvenile authorities, although Mr. Jones was aware of the incident. The other two incidents, which occurred in October 1977 and January 1978, were apparently investigated by police. At any rate, they were reported to the Juvenile Probation Counselor, Mr. Jones, who took no official action. Mr. Jones counseled the accused and kept the

---

1. Appellant was found guilty of housebreaking, 3 specifications of burglary, 6 specifications of larceny and attempted housebreaking, in violation of Articles 129, 121 and 80, Uniform Code of Military Justice, 10 U.S.C. §§ 929, 921 and 880, respectively.

2. All references to paragraphs, Tables, or Figures in this opinion are to this regulation, unless otherwise indicated.

latter two incidents in "open" status for "as long as he stayed out of trouble," referring to Airman Buckingham.

.    .    .    .    .

My finding that Staff Sergeant Knettle did not engage in any deliberate act to conceal Airman Buckingham's unlisted juvenile offenses or to enlist Airman Buckingham with the knowledge of any pending civil or criminal charges is made using Staff Sergeant Knettle's own interpretation of what would be required to be reported and what would make an applicant ineligible for enlistment. Specifically, it involves Staff Sergeant Knettle's own interpretation of what would be considered a "pending" or "open" civil or criminal case. In fact, I am convinced that Item 8 of Table 1–1, Air Training Command Regulation 33–2, which is Appellate Exhibit I, an extract, did not apply to Airman Buckingham's situation at the time of the enlistment, although Item 3 of that Table undoubtedly did apply. Since I do not believe that Staff Sergeant Knettle knew that the Juvenile Probation Officer was holding the latter two allegations against the accused in open status, my personal belief that Item 8 of the Table did not apply to this case did not influence this decision and is not directly on point.

The appellant enlisted in the Air Force Reserve on April 19, 1978. The record indicates he was discharged from the Air Force Reserve on May 17, 1978, as part of the Delayed Enlistment Program. On May 18, 1978, he enlisted in the Regular Air Force for four years. It is unchallenged that the appellant was required to meet the eligibility criteria of the Regular Air Force. *See* para. 2–23b(C1) (December 1977).

The appellant's first contention is that Air Force Regulations were violated when his recruiter advised him to omit notation of his involvement in these three civilian offenses. *See* ATC Form 1415, January 1978. He also asserts that service regulations require a moral waiver for these offenses. *See generally* para. 1–2e, *supra*; paras. 1–10 and 1–18. Such deliberate inac-

tion by the recruiter is characterized by the defense as recruiter misconduct sufficient to disqualify the appellant from enlisting in the Air Force. *See* para. 1–1w, and para. 1–4(C1) (December 1977).

■ The deliberate violation of service regulations in and of itself did not void an enlistment contract for jurisdictional purposes under the *Russo* decision. *United States v. Lightfoot*, 4 M.J. 262, 263 n. 3 (C.M.A.1978). Accordingly, even assuming the recruiter, in contravention of service regulations, advised the appellant not to list his involvement in these offenses, this alone would not defeat court-martial jurisdiction. There had to be a significant regulatory impediment to the accused's enlistment which was nonwaivable. *United States v. Stone, supra.*

■ Item 3 of Table 1–1 states in effect that "[a]pplicants for all programs are ineligible to enlist if" an applicant "[h]as a moral disqualification listed in table 1–2." *Cf.* para. 1–18a(2). Table 1–2(C1) (December 1977), indicates that such a moral disqualification exists "if applicant has a conviction or adverse adjudication (adult or juvenile)" for various offenses delineated in the regulation. *See* para. 1–18d. In appellant's case, there is no evidence or averment in this record of trial that has alleged involvement in any of these unlisted offenses was handled in a manner rising to the level of a judicial finding or disposition. Therefore, no regulatory disqualification arose on this ground. *See United States v. Murawsky, supra.* In any event, waivers could be obtained for these offenses under service regulations even if such a final judicial disposition had been shown. *See* Figures 1–1 through 1–4 and Table 1–2. Accordingly, no motion to dismiss based on *United States v. Russo, supra*, existed under these circumstances. *United States v. Stone, supra.*

The appellant's second contention is that the appellant was absolutely disqualified to enlist because at the time of his enlistment there were criminal charges against him in an open status. He argues that the recruit-

er was aware of these pending criminal charges and deliberately concealed them in order to effect the enlistment.

▮ Item 8, Table 1–1, states that an applicant is "ineligible to enlist if . . . [c]ivil or criminal charges" are "filed or pending by civil authorities." The military judge in this case indicated that he did not believe this regulation applied to the appellant. We agree. *United States v. Murawsky, supra.* These allegations of misconduct against the appellant were resolved informally by the probation officer and on file in his office. The stipulation of expected testimony from the appellant's probation officer and documentary evidence in the record of trial indicate that there were no formal charges pending against him in any court at the time of his enlistment.

The appellant's final contention is that his recruiter unlawfully induced him to enlist in the Air Force.[3] *See Bemis v. Whalen*, 341 F.Supp. 1289, 1291 (S.D.Cal.1972). He asserts that his recruiter promised him that he could receive a discharge after nine months if he could not cope or did not like military life. The appellant argued that this was sufficient recruiter misconduct to void his enlistment contract as a basis for court-martial jurisdiction. *See* para. 1–5*b* (8)(C1) (December 1977).

▮ The military judge found the evidence on this issue indicated an honest misunderstanding of the recruiter's words rather than a conflict in testimony requiring a credibility determination. Regardless of the standard of proof he employed, we be-

lieve there is sufficient evidence in the record of trial to support this conclusion. In any event, this type of recruiter misconduct is not within the ambit of the decisions of this Court in *United States v. Russo, supra,* or *United States v. Catlow,* 23 U.S.C.M.A. 142, 48 C.M.R. 758 (1974); *see United States v. Stone, supra,* and *United States v. Murawsky, supra.*

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

COOK, Judge (concurring in the result):

Subsequent to accused's trial, Congress amended Article 2, Uniform Code of Military Justice, 10 U.S.C. § 802, to bar imposition of a defense to the exercise of court-martial jurisdiction predicated upon alleged recruiter misconduct like that presented by the accused.[1] It seems to me, therefore, that the primary question is whether that statutory change forecloses appellate review of the purported error in the standard of proof utilized by the trial judge to reach a conclusion that no recruiter misconduct tainted the accused's voluntary enlistment. In my opinion, the congressional clarification of the public policy incidents of a voluntary enlistment demonstrates that the Court's view in *United States v. Russo*[2] of the effect of recruiter misconduct on the enlistment process was impermissibly overbroad. I would, therefore, apply the new provisions of Article 2 to the accused's case and hold that no jurisdictional issue exists for review.

---

3. *See generally* Schlueter, *The Enlistment Contract: A Uniform Approach,* 77 Mil.L.Rev. 1, 18–24 (1977).

1. P.L. 96–107, 93 Stat. 810 (Nov. 9, 1979).

2. 1 M.J. 134 (C.M.A.1975).