**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

BRENT A. BURKE,

      Petitioner - Appellant,

v.

ERICA NELSON,

      Respondent - Appellee.

No. 16-3314
(D.C. No. 5:15-CV-03245-JWL)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **O'BRIEN**, and **PHILLIPS**, Circuit Judges.
_____

    The Commonwealth of Kentucky tried four times to convict Brent A. Burke of double murder. Four mistrials resulted. Then the United States Army charged and convicted Burke for the double murder. In a 28 U.S.C. § 2241 habeas corpus petition, Burke now argues that the Army lacked jurisdiction to try him and, further, that it violated his Fifth Amendment rights at trial. Burke is currently in custody at the United States Disciplinary Barracks in Fort Leavenworth, Kansas. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's order denying Burke's petition.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

On October 15, 2007, the Commonwealth of Kentucky arrested Burke for murdering his estranged wife and her former mother-in-law from an earlier marriage. At all relevant times, Burke was an active-duty sergeant in the Army. Starting in September 2009 and ending in April 2011, Kentucky prosecuted Burke four separate times for the murders, each trial ending in mistrial—because of evidence mishandling, a sick prosecution witness, and then two hung juries. Never during these years of legal proceedings did Burke request a discharge from, or object to his continued enlistment in, the military. On May 20, 2011, in fact, five days before his May 25 Expiration of Term of Service (ETS) date, Burke sent a letter to his battalion commander stating his intent to remain in the Army. On June 29, 2011, after the fourth mistrial, state prosecutors dismissed the charges against Burke without prejudice. The next day, Kentucky released Burke into the custody of the United States Army. On July 8, 2011, the Army charged Burke with the murders and other associated crimes.

On May 8, 2012, a court-martial panel convicted Burke of the two murders, burglary, child endangerment, and obstruction of justice. Burke was sentenced to life confinement without parole, as well as a reprimand, a reduction in rank to private, forfeiture of all pay and allowances, and a dishonorable discharge. During the appeals process, Burke first argued to the court-martial convening authority that the Army had lacked jurisdiction over him and had violated his Fifth Amendment rights by admitting into evidence at his court-martial his earlier statements to Kentucky police. The convening authority denied Burke relief. Burke then appealed to the Army Court of

Criminal Appeals (ACCA), raising multiple issues, including those premised on jurisdiction and the Fifth Amendment. After oral argument on the Fifth Amendment issue, the ACCA affirmed the core findings of guilt and the sentence.[1] Burke then submitted a Petition for Grant of Review to the Court of Appeals for the Armed Forces (CAAF), once again raising the Fifth Amendment and lack-of-jurisdiction issues, among a host of others. The CAAF denied Burke's Petition. Finally, Burke turned to the federal courts and filed a Petition for Writ of Habeas Corpus in the District of Kansas. On September 14, 2016, the district court denied Burke's Petition. Burke now appeals pro se, raising only the two well-litigated issues of military jurisdiction and the Fifth Amendment.[2]

II

Burke proceeds pro se on appeal, so we construe his pleadings liberally, but we do not serve as his advocate. *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008). We review de novo the district court's denial of habeas relief. *Fricke v. Secretary of Navy*, 509 F.3d 1287, 1289 (10th Cir. 2007). But we generally limit our review of courts-martial, which are military tribunals of special and limited jurisdiction, to two issues: (1) was military jurisdiction proper?; and (2) did the military give full and fair consideration to a petitioner's constitutional claims? *Id.* at 1289-90. In reviewing the

---

[1] The ACCA dismissed one charge as an unreasonable multiplication of other charges. The United States had conceded the error. The dismissal did not change the sentence.

[2] The district court has already granted Burke *in forma pauperis* status for this proceeding.

military's jurisdiction to hear the case, we make our own determination without affording any deference to the military court's determination. *Id.* at 1290. But in evaluating the "full and fair consideration" standard governing constitutional claims, we deny claims that were briefed and argued before a military court, even if the result was summary dismissal. *Watson v. McCotter*, 782 F.2d 143, 145 (10th Cir. 1986).

First, Burke claims that the military lacked the proper jurisdiction to try him. Court-martial jurisdiction did not attach to him, he says, until charges were preferred against him on July 8, 2011. By that time, he argues, because his ETS date had passed and because military regulations state that enlistment should end thirty days after an ETS date, he was no longer in the military and therefore beyond the reach of any court-martial.

But Burke is mistaken that he had a right to an automatic or constructive discharge from the United States armed forces. "[A]ll servicemen, 'including those awaiting discharge after expiration of their terms of enlistment' are subject to the Code of Military Justice." *Fricke*, 509 F.3d at 1290 (quoting *Desjardins v. Department of Navy*, 815 F. Supp. 96, 98 (E.D.N.Y. 1993) (quoting 10 U.S.C. § 802(a)(1))). The statute governing military discharge makes clear that a member of the armed forces "may not be discharged or released from active duty until his discharge certificate or certificate of release from active duty . . . and his final pay or a substantial part of that pay, are ready for delivery." 10 U.S.C. § 1168(a).

Burke attempts to counter this body of law by pointing to military regulations that he contends required his discharge before his court martial. In particular, he points to an

4

Army regulation providing that "[i]f charges have not been preferred, the Soldier will not be retained more than 30 days beyond the ETS unless the general court-martial convening authority approves retention." Army Regulation 635-200, 1-22(b). Burke's ETS date was May 25, 2011. He was not charged until July 8, 2011, more than thirty days later.

But the regulation is not the only law applying here. Courts have already rejected any view that Regulation 1-22(b) provides an automatic discharge power. In *United States v. Hutchins*, 4 M.J. 190, 192 (C.M.A. 1978), the Court of Military Appeals[3] acknowledged that the regulation obliges a court-martial convening authority to act when a service member is retained more than thirty days past his ETS date. *Id.* But it also concluded that the regulation "has no effect on court-martial jurisdiction." *Id.* Military regulations must yield to Congressional requirements for military discharge. *Id.* And the language Congress used leaves no room for any self-enforcing discharge. *See id.*; 10 U.S.C. § 1168(a). Burke's citation to *United States v. Russo*, 1 M.J. 134, 135 (C.M.A. 1975) does nothing to change this. As *Hutchins* noted, the defendant in *Russo* was never subject to the Code of Military Justice, because recruiter misconduct and failure to meet enlistment standards rendered the enlistment void from its inception. 4 M.J. at 192. Here, no one disputes that Burke's enlistment was valid.[4]

---

[3] The Court of Military Appeals (C.M.A.) later became the Court of Appeals for the Armed Forces (C.A.A.F.).

[4] Burke also cites to an unpublished case from our circuit (which the district court cited), *Williams v. Weathersbee*, 280 Fed. Appx. 684, 686 (10th Cir. 2008), to further his automatic-discharge argument. *Williams*, based in part on a reading of the

Burke might have had a stronger argument had he timely objected to his retention in the military. *See id.* ("As no action was taken to separate the appellant from the service *and appellant did not object to his retention*, his military status was not terminated.") (emphasis added). But he did not. As referenced, five days before his ETS date, he signaled his intention to re-enlist. He did not object to his military status until July 26, 2011, eighteen days after the military had brought charges against him. And "a demand [for discharge] made after the preferral of charges is too late." *Id.* at 191. But even a timely objection might not have been enough. In *Dickenson v. Davis*, 245 F.2d 317, 319 (10th Cir. 1957), at least sixty days had elapsed between a service member's request for discharge and charges being brought against him. We upheld court-martial jurisdiction because of the lack of formal discharge, noting that "the status of the accused as a soldier was unbroken and the charge against him was based upon an offense committed by him during his term of enlistment." *Id.* That description applies equally well to Burke.

In the armed forces, formalities matter. "Service in the military, whether by enlistment or otherwise, creates a status which is not and cannot be severed by breach of

---

military's court-martial manual, noted that military jurisdiction "once established while [the service member] is still a member of the military" can continue past an ETS date. *Id.* The implication being, Burke suggests, that if it did not attach before the ETS date, it cannot do so afterward. This is incorrect. First, as discussed, Army regulations cannot override Congress's mandate that discharge not occur until the proper papers and final pay are ready for delivery. *See* 10 U.S.C. § 1168(a). Second, the Manual for Courts-Martial that *Williams* cited states elsewhere that court-martial jurisdiction "continues past [an ETS date] until a discharge certificate or its equivalent is delivered or until the Government fails to act within a reasonable time after the person objects to continued retention." Rule 202(a)(2)(B)(i), Manual for Courts-Martial (2016 ed.). Burke never received discharge papers and never objected until after being charged.

contract unfortified by a proper authoritative action." *Id.* Military inaction cannot substitute for the formalities that Congress has mandated for discharge. The bottom line is that "[w]hether [the military] should have discharged Petitioner or not, the fact remains that Petitioner was not discharged." *Fricke*, 509 F.3d at 1290. Burke's discharge papers and final pay were never ready for delivery. He remained a member of the military until his sentence that included a dishonorable discharge became final, and thus the military had proper jurisdiction to try him.[5]

### III

Burke next claims that his Fifth Amendment rights were violated when his statements from his interview with Kentucky State Police during the murder investigation were used against him at his court-martial even though he was not advised of his rights during questioning. We have no authority to delve into the substance of this claim. As mentioned, when it comes to court-martial rulings on constitutional claims, our review is sharply limited: so long as the claim was briefed and argued before a military court, we must deny the claim. *Watson*, 782 F.2d at 145. And here Burke made his Fifth Amendment argument before the convening authority of his court-martial, which received briefs, heard argument, and then found for the United States. Burke also briefed his Fifth Amendment claim in his appeal to the ACCA and that court heard arguments on

---

[5] Because we find that the military had jurisdiction over Burke even if his ETS date was May 25, 2011, we need not reach Burke's preemptive argument against finding that his civilian confinement extended his ETS date. And because we hold that the military had proper jurisdiction even if jurisdiction did not attach until charges were preferred on July 8, 2011, we do not consider whether jurisdiction actually attached earlier due to a period of confinement or a military investigation.

the matter. The court then denied the claim in a written opinion. Burke briefed the issue again in his Petition for Grant of Review to the CAAF, which summarily denied the Petition. Those multiple layers of substantive military court review are more than adequate to foreclose our own review. *See id.* We conclude that Burke's Fifth Amendment claim has already been fully and fairly considered and so deny it.

We affirm the district court's denial of Burke's habeas petition.

Entered for the Court


Gregory A. Phillips
Circuit Judge
