1. *See also United States v. Middleton*, 10 M.J. 123 (C.M.A.1981).

UNITED STATES

v.

**Gregory A. FRANCIS, 542 82 9895, Private (E–1), U. S. Marine Corps.**

**NMCM 81 1321.**

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 3 Nov. 1980.

Decided 26 April 1982.

LT Thomas P. Murphy, JAGC, USNR, Appellate Defense Counsel.

LT Philip J. Shebest, JAGC, USNR, Appellate Defense Counsel.

LT Wm. Eric Minamyer, JAGC, USNR, Appellate Government Counsel.

Before CEDARBURG, C. J., and GLADIS and BOHLEN, JJ.

BOHLEN, Judge:

On 24 and 26 September 1980, appellant was tried by a military judge at special court-martial for a violation of Article 86, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 886. The unauthorized absence specified on the charge sheet ran from 5 March 1979 to 16 July 1980. Appellant pled guilty to a period of unauthorized absence from 5 March 1979 to 3 April 1979. The military judge accepted appellant's pleas. Trial counsel then stated that the Government intended to prove the greater period of absence. Thereupon, the military judge found the appellant guilty of the absence terminating on 3 April 1979. No finding was made as to the remaining period of absence, although defense counsel objected to the fact. Trial counsel then requested a continuance to gather and present evidence on the latter period of absence. Defense counsel objected on the grounds that he had already informed trial counsel of his client's intention to plead guilty by exceptions and substitutions, thereby apprising trial counsel of the fact that his client would plead not guilty to some part of the charge. Counsel debated the question of whether the Government had requested and been denied discovery as to an early termination date.

On 26 September 1980, the Government requested that the military judge make no findings as to the second period of absence from 3 April 1979 to 16 July 1980. Trial counsel made three assumptions: (1) that no jeopardy had attached to the second period of absence as no evidence had been presented thereon, (2) that it was too late to amend the current charge, and (3) that it was too late to withdraw the existing charge. The military judge granted the Government's request not to make findings with regard to the second period of appellant's unauthorized absence.

Subsequent to the presentation of the evidence and appellant's sworn statement that he wished to stay in the Marine Corps, the military judge sentenced appellant to thirty days confinement at hard labor. The maximum punishment appellant could have received for the 28 days of unauthorized absence from 5 March to 3 April was 6 months confinement at hard labor and the forfeiture of two-thirds pay per month for six months.

The convening authority's action on the record was described by the military judge at the second trial:

MJ: The accused was convicted of an absence covering the period from 5 March 1979 until 3 April 1979. Then on the 16th of October, there was a special court-martial order 37–1980 by the Commanding Officer, Marine Corps Service Support Schools, Marine Corps Base, Camp Lejeune, North Carolina, which, in addressing the findings—well, I'll read from the order: "Of the excepted date, not guilty. Of the substituted date, guilty." Of the specification as excepted and substituted, guilty." And in that same action, the convening authority says, and I read, ". . . only so much of the sentence as provides for confinement at hard labor up to and including 17 October 1980 is approved and will be duly executed." So the convening authority approved the sentence but in no other fashion addressed the findings.

Then on the 28th of October, there was a supplemental court-martial order 2–1980 which was promulgated by the convening authority, and apparently what we have had there is a—the pleas and findings, of special court-martial order 37–1980 was done in a boiler-plate fashion, and then some time prior to the 28th of October, recognizing the error, there was a supplementary special court-martial order promulgated which, in addressing the findings, reads: Guilty, except for the date 16 July 1980, substituting therefor the termination date of 3 April 1979. To the substituted date, guilty. No findings were entered as to the excepted date. Apparently what there was was a typographical error, typographical error which was corrected by a supplementary special court-martial order.

Record of second trial at 13. The judge's estimation of the nature of the error and its correction was accepted by both Government and defense at the second trial.

On 3 November 1980, appellant again entered the courtroom, this time to be tried by military judge at special court-martial on the charge of being an unauthorized absentee from 9 April 1979 to 16 July 1980 in violation of Article 86, UCMJ. Defense counsel argued that res judicata had attached to the charge and specification before the court since the period of unauthorized absence alleged had been put before another court on 24 and 26 September 1980. Defense counsel argued that appellant had been convicted at that earlier trial of a lesser included offense to the charged offense, then before the previous court. Defense counsel also argued that former jeopardy had attached to the entire offense first charged when appellant was tried for the first segment of the period charged. Finally defense counsel argued that when appellant was found guilty of the first segment of unauthorized absence, when that limited finding was approved, and no findings made for the remaining period, appellant was effectively acquitted of the rest of the period initially charged. The Government opposed the defense positions.

Contrary to his pleas, appellant was found guilty of the offense charged at the second trial. In a sworn statement, he reiterated his desire to stay in the Marine Corps. The military judge sentenced him to a bad-conduct discharge but recommended that it be suspended. The convening authority approved the findings and suspended the sentence. The findings and suspended sentence were subsequently approved by the supervisory authority.

Appellant and Government have at our request briefed the following issue for our consideration:

WHETHER APPELLANT'S CONVICTION OF 26 SEPTEMBER 1980, FOR UNAUTHORIZED ABSENCE INVOKES EITHER THE DEFENSE OF FORMER JEOPARDY, ARTICLE 44, UNIFORM CODE OF MILITARY JUSTICE, *RES JUDICATA*, PARAGRAPH 7 1B, *MANUAL FOR COURTS-MARTIAL, 1969 (REV.)* (MCM), OR FAILURE TO TRY ALL KNOWN CHARGES AT A SINGLE TRIAL, PARAGRAPH 33 *H*, MCM, (R.8), TO PRECLUDE THE COURT–MARTIAL AND CONVICTION PRESENTLY BEFORE THIS COURT?

We note that appellant was, at each of his trials subject to maximum confinement and forfeitures within the jurisdiction of a special court-martial—a situation which would not have obtained had both the two eventual charges been referred separately to the same court or had the charge originally referred to the first court never been bifurcated. If there ever was an illustration of the evil which could flow from a violation of the mandate to try all known charges at a single trial, paragraph 33*h*, MCM, this is it. In a recent opinion illustrative of a line of opinions emphasizing this policy the Court of Military Appeals has once again stated:

Any additional charges which are referred to trial should "relate to transactions not known at the time" of the original preferral "or to offenses committed after the original charges were preferred." It also must be accomplished

"before arraignment" of the military accused on the original charges. Para. 24*b*, Manual, *supra.*

*United States v. Kazena*, 11 M.J. 28, 32 (CMA 1981). Although the court in *Kazena* was speaking of additional charges referred to the original court not, as we have in this case, to a second court, we find the *Kazena* Court's rationale beneficial to our analysis of this case.

This case does not involve "offenses committed after the original charges were preferred." We are faced then with two questions: (1) whether the charge referred to the second court-martial related to an offense "not known at the time of the original preferral;" and (2) whether the appellant and his trier, prior to arraignment were constructively aware that any charge relating to the second period of absence would not be tried at the existing court-martial. We answer both those questions in the negative.

■ In distinguishing between offenses known and not known at the time of the original preferral, we face a special situation in a case involving unauthorized absence. The Government's own regulations covering the recording of status changes in unauthorized absences are far more extensive than those governing the recording of other offenses. For one thing, it is not very difficult to discover an unauthorized absence, nor is it very difficult to determine that such an absence has terminated. Appellant's own status and any changes therein should have been recorded in accordance with various provisions of the *Marine Corps Individual Records Administration Manual*, MCO P 1070.12, (*IRAM*), especially sections 4007, 4009 and 4014. The emphasis placed on the keeping of accurate records in cases of unauthorized absence is obvious. Section 4014–2–a–(2) reads:

> *Unauthorized Absence.* The importance of accuracy in content and signature of all entries regarding unauthorized absence cannot be overstressed. * * * * It must be clearly understood that the required information must be accurately recorded and properly authenticated, in or-

der to be allowed as evidence in courts-martial. Any aggravating circumstances known should be included in the entries. Aggravating circumstances included declarations made by the Marine regarding the absence. . . . If aggravating circumstances become known after the unauthorized absence entry is made, record the date and circumstances immediately below the unauthorized absence entry. . . .

> \*   \*   \*   \*   \*   \*

> (c) Upon apprehension, delivery, or surrender of a Marine in an unauthorized absence status, it will be recorded as follows: date; organization; place; date and hour of return to military control; how he/she returned to military control; number and date of the unit diary on which the termination of absence was reported.

We agree that appellant's surrender to a command other than his own created an additional step in the process by which the record of that termination would reach appellant's court-martial convening authority. But this step is not a particularly difficult one. Certainly the transmittal of information of this sort is assumed in the Government's own regulations. Section 4007–1–d, *IRAM*, reads:

> REMARKS

> The remarks portion of this page will be utilized for entering the effective date of such occurrences as joinings. . . . At the termination of periods of non-duty such as confinement, unauthorized absence in excess of 24 hours or desertion, record the commencement and return date of such periods * * * * When Marines are performing duties away from their parent organization, and occurrence for a chronological record entry arises, the remarks portion of the entry will contain the name, reporting unit code (RUC) and the monitored command code (MCC) of the organization making the entry.

Appellant's surrender was known to the Government. It was reasonably discoverable by the Government's representative at trial. We therefore hold the Government

to knowledge of the early termination date and second commencement date as of appellant's arraignment at the first trial.

The issue of the accountability of the Government for adherence to its own regulations has arisen in several cases. In *United States v. Perl*, 2 M.J. 1269 (ACMR 1976), the Army Court made the following remarks:

> The Court of Military Appeals in *United States v. Russo*, 23 U.S.C.M.A. 511, 512, 50 C.M.R. 650, 651, 1 M.J. 134, 135 (1975), stated that it is "well-settled that a government agency must abide by its own rules and regulations where the underlying purpose of such regulations is the protection of personal liberties or interests." However, if the regulation is adopted for the benefit of the particular government agency in transacting its business and is not designed to confer important rights upon individuals, a person cannot complain of deviations from the regulation except upon a showing of substantial prejudice. *American Farm Lines v. Black Ball Freight Service*, 397 U.S. 532, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970); *National Labor Relations Board v. Monsanto Chemical Company*, 205 F.2d 763 (8th Cir. 1953). *Id.* at 1272.

In *United States v. Russo*, 23 U.S.C.M.A. 511, 50 C.M.R. 650, 1 M.J. 134 (1975), the Court recognized the possibility that a regulation might protect both the serviceman's interests and those of the Government. *Id.* 1 M.J. at 136. In *United States v. Dettinger*, 7 M.J. 216 (CMA 1979), the Court recognized that while "the public interest [may be] the primary consideration in a situation of this kind, [that] does not mean that it is the exclusive consideration." The accused as well as the public may benefit by such a regulation. *Id.* at 223–224. In *United States v. Torres*, 3 M.J. 659 (ACMR 1977), the Court held that "each case must be examined for prejudice to the accused in determining what remedy to apply when the Government fails to comply with its own regulations." *Id.* at 663.

█  Here, if the Government complied with its own regulations relative to recording appellant's early termination date, we cannot permit it to argue surprise at court and win a second shot at appellant. If the Government did not comply with its own regulations, we cannot allow it that second shot where such would, as it did below, subject appellant to the prejudice inherent in standing trial twice and risking a total of 12 months confinement at hard labor, 12 months of forfeiting two-thirds of his pay and a bad-conduct discharge for offenses which, if recorded in accordance with regulations would have justified only one trial and a total of 6 months confinement at hard labor, 6 months forfeiture of two-thirds pay and a bad-conduct discharge.

All relief is however not denied to the Government in the case of surprise. That relief which would work no prejudice to an accused is acceptable. Prior to arraignment, the Government had the option of requesting a continuance to withdraw the charge and specification and to refer to that same court, either in addition to or in place of the original specification, two new specifications alleging in turn each segment of appellant's broken absence. This would have been proper. Had such a continuance been requested, we would not be faced with the present unsatisfactory state of affairs. Prior to the close of the providence inquiry, the Government might have amended the specification to reflect a termination date of 3 April 1979, thereby properly removing from judicial consideration any subsequent period of absence. The Government might then have referred the second period of absence to another court, although in that event the Government would have carried a heavy burden in attempting to justify its inability to refer the second specification at the first trial. In a case where fraud had kept from the Government an awareness of the early termination and second commencement dates, and perhaps in some other cases, we would not have faulted the Government for an apparent breach of Paragraph 33*h* MCM.

This case presents another twist on the facts presented in *United States v. Reeder*, 22 U.S.C.M.A. 11, 46 C.M.R. 11 (1972) and

*United States v. Brown,* 1 M.J. 937 (NCMR 1976). In *Reeder,* the specification at appellant's trial alleged an unauthorized absence commencing on 4 January 1969 and terminating on 11 June 1971. At the providence inquiry appellant indicated an early termination date of 10 January 1969. The military judge did not believe appellant's contention of early termination and found appellant's plea of guilty provident as to the entire offense. The Court of Military Review on reconsideration approved the findings of guilty only to the absence from 4 January to 10 January 1969. The Court of Military Appeals approved the review Court's affirmance of appellant's guilt of the first six-day absence. The appeals Court would not have sanctioned an affirmance of findings of guilty on the second absence since to have done so would have meant allowing an accused to face conviction of an offense not charged.

In *Brown,* the specification at appellant's trial alleged an unauthorized absence commencing on 1 October 1974 and terminating on 21 March 1975. When appellant indicated an early termination date of 4 October 1974, the military judge set aside appellant's guilty plea. Subsequently, defense counsel amended appellant's guilty plea to apply to the second and longer period of absence from 4 October 1974 to 20 March 1975.

The situation in the present case provides elements of both *Brown* and *Reeder.* As in *Reeder,* the appellant here pled guilty only to the offense commencing on the charged date. To the rest of the period appellant pled not guilty. Defense counsel below rightly had his client plead not guilty to the second, uncharged, commencement date. However, the judge's response in the instant case worked as much to the detriment of the appellant as did the judge's approach in *Brown.* In *Brown* the judge permitted the accused to compete at trial handicapped by a guilty plea to an uncharged offense; here the judge acceded to a losing Government's wish to declare no winner in deference to a rematch. Each judge put the respective accused at an impermissible disadvantage. It was the Government's obligation to withdraw the defective specification before arraignment or amend the termination date thereof prior to findings. In the end, upon Government's failure to withdraw or amend the defective specification at the proper time, the burden fell on the military judge to enter findings of not guilty to the defective specification. Like the Court in *Brown,* we place the heaviest burden on the military judge to conduct a trial in accordance with sound legal principles. *Brown* at 940, citing *United States v. Heflin,* 23 U.S.C.M.A. 505, 50 C.M.R. 644, 1 M.J. 131 (1975). *See also United States v. Lynch,* 22 U.S.C.M.A. 457, 47 C.M.R. 498 (1973).

Where the original specification went unaltered to findings before the judge, we find that the requests of trial counsel were ineffective in their attempt to limit any findings to a given chronological segment of that specification. Jeopardy attached to the entire period stated in the specification. We find that the military judge erred. Accordingly, the findings and sentence are set aside, the charge and specification are dismissed. Any rights, privileges and immunities of which appellant was denied pursuant to the outcome of the trial below are hereby restored.

Chief Judge CEDARBURG and Judge GLADIS concur.